STATE OF NORTH CAROLINA v. ROY EUGENE BRYANT, Defendant

No. COA02-1706

(Filed 6 April 2004)

**Constitutional Law— due process—sex offender registration**

The North Carolina statute requiring registration of sex offenders, N.C.G.S. § 14-208.11, is unconstitutional as applied to a person convicted in another state who has moved to North Carolina and lacks notice of his duty to register in North Carolina. Due process requires that a defendant have knowledge, actual or constructive, of the statutory requirements, and the statute as written does not adequately address the reality of our mobile society.

Appeal by defendant from judgment entered 21 February 2002 by Judge William Z. Wood, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 3 December 2003.

*Attorney General Roy C. Cooper, by Special Deputy Attorney General John J. Aldridge, III, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Janet Moore, for defendant-appellant.*

GEER, Judge.

Defendant Roy Eugene Bryant, formerly a resident of South Carolina, appeals from his conviction for failure to register in North Carolina as a sex offender when he moved to this State from South Carolina. He also appeals from his conviction as a habitual felon. We hold that North Carolina's sex offender registration statute is unconstitutional as applied to an out-of-state offender who lacked notice of his duty to register upon moving to North Carolina. We therefore reverse defendant's convictions.

Facts

On 19 November 1991, in Pickens County, South Carolina, defendant pled guilty to third degree criminal sexual conduct and was sentenced to a term of ten years imprisonment. Prior to his 9 April 2000 release from the custody of the South Carolina Department of Corrections, defendant signed a "Notice of Sex Offender Registry" form. On the form, he indicated that he would be living with his

mother in Greenville, South Carolina. On 17 August 2000, defendant completed a registration form notifying authorities that he had moved to Pickens County, South Carolina.

In the fall of 2000, defendant was working with a traveling fair. While the fair was in Winston-Salem, North Carolina, defendant suffered a broken jaw. After being treated at a hospital, defendant chose to remain in Winston-Salem rather than moving on with the fair. In November 2000, defendant moved in with a woman he had met at the fair and lived with her at 4373 Grove Avenue in Winston-Salem.

On 30 March 2001, Kelly Wilkinson, a detective with the Winston-Salem Police Department, had occasion to perform a check of defendant's criminal record. She discovered that defendant was registered as a sex offender in South Carolina, but was not registered in North Carolina. During an interview at the police department, defendant told the detective that his address was currently 4373 Grove Avenue in Winston-Salem.

On 2 April 2001, Wilkinson contacted Sharon Reid, the deputy sheriff with the Forsyth County Sheriff's Department responsible for maintaining the county's sex offender registry, and notified her that defendant was a convicted sex offender who was not registered in North Carolina. After verifying this information, Reid determined that the offense for which defendant was convicted in South Carolina had a statutory equivalent in North Carolina that would trigger the duty to register. Defendant was then arrested and indicted for failure to register as a sex offender. He was subsequently also indicted for having attained the status of habitual felon.

Prior to trial, defendant filed a motion seeking a declaration that the North Carolina sex offender registration statute's failure to provide out-of-state persons with notice of the duty to register in North Carolina violated defendant's equal protection and due process rights under the Fourteenth Amendment of the United States Constitution. Following the trial court's denial of the motion, a jury found defendant guilty as to both the failure to register and habitual felon charges. The trial court sentenced defendant to 133 to 169 months imprisonment.

## Discussion

Defendant assigns as error the trial court's denial of his motion to declare N.C. Gen. Stat. Chapter 14, Article 27A unconstitutional as applied to residents of other states who move to North Carolina.

Defendant's central argument is that the statutory scheme, which imposes a duty to register with county authorities on certain sex offenders, violates the right to due process of out-of-state residents who move to North Carolina by allowing them to be convicted of the offense without notice of the duty to register.

N.C. Gen. Stat. § 14-208.7 (2003) establishes a duty to register for certain sex offenders who reside within North Carolina, as well as those who move into North Carolina from other states:

> A person who is a State resident and who has a reportable conviction shall be required to maintain registration with the sheriff of the county where the person resides. If the person moves to North Carolina from outside this State, the person shall register within 10 days of establishing residence in this State, or whenever the person has been present in the State for 15 days, whichever comes first.

N.C. Gen. Stat. § 14-208.7(a). A person required to register must notify the sheriff of the county with whom the person last registered of any change of address within ten days. N.C. Gen. Stat. § 14-208.9(a) (2003). Failure to comply with the registration and change-of-address provisions is a felony:

> (a) A person required by this Article to register who does any of the following is guilty of a Class F felony:
>
> (1) Fails to register.
>
> (2) Fails to notify the last registering sheriff of a change of address.

N.C. Gen. Stat. § 14-208.11(a)(1), (2) (2003).

With respect to in-state sex offenders, the statute provides that a prison official shall notify the offender of the duty to register at least ten days, but not more than 30 days, before the offender is due to be released from a penal institution. N.C. Gen. Stat. § 14-208.8(a)(1) (2003). The statute contains no provision for notification of sex offenders moving to North Carolina from another state of North Carolina's registration requirements.

This Court has previously held that the registration statute "has no requirement of knowledge or intent, so as to require that the State prove either [a] defendant knew he was in violation of or intended to violate the statute when he failed to register his change of address."

*State v. Young*, 140 N.C. App. 1, 8, 535 S.E.2d 380, 384 (2000), *disc. review denied*, 353 N.C. 397, 547 S.E.2d 430 (2001). *See also State v. White*, 162 N.C. App. 183, 189, 590 S.E.2d 448, 452 (2004) ("We hold as a matter of statutory construction that N.C. Gen. Stat. § 14-208.11 does not require a showing of knowledge or intent."). Nevertheless, as this Court observed in *Young*, "although ignorance of the law is no excuse, and the statute at issue does *not* require the State to prove intent, due process requires that [a] defendant have knowledge, actual or constructive, of the statutory requirements before he can be charged with its violation." *Young*, 140 N.C. App. at 12, 535 S.E.2d at 386 (emphasis original; holding that sex offender registration statute violated due process as applied to a defendant who had been adjudicated incompetent).

The *Young* Court based its holding on *Lambert v. California*, 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240 (1957), in which the United States Supreme Court confronted the question whether a municipal ordinance imposing a registration requirement on convicted felons who remained in the city of Los Angeles for more than five days violated due process. Emphasizing that the conduct involved was wholly passive (a mere failure to register), the Court noted that the defendant "on first becoming aware of her duty to register was given no opportunity to comply with the law and avoid its penalty, even though her default was entirely innocent." *Id.* at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243. The Supreme Court held:

> We believe that actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand. . . . Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process.

*Id.* at 229-30, 2 L. Ed. 2d at 232, 78 S. Ct. at 243-44.

This Court observed in *Young* that "in line with due process notice requirements, our Legislature has written the [sex offender registration] statute such that it mandates a convicted sex offender be notified of the registration requirements. *Under ordinary circumstances* such a provision would work to remove the statute from due process notice attacks." *Young*, 140 N.C. App. at 8, 535 S.E.2d at 384 (internal citations omitted; emphasis added). The Court further held, however: "N.C. Gen. Stat. § 14-208.11 does not provide adequate

notice for an incompetent sex offender to comply with the statute's requirements. Due process requires not just the mechanical act of notifying a defendant or the automatic assumption that the notice is good, but in fact, we believe due process requires that notice be synonymous with the ability to comply." *Id.* at 10, 535 S.E.2d at 385.

This Court reasoned that although Young, who had been adjudicated incompetent, was provided with sufficient notice of the registration requirement to satisfy due process for any reasonable and prudent man, Young was not a reasonable and prudent man. *Id.* at 9, 535 S.E.2d at 385. Therefore, what constituted "actual notice" to a reasonable and prudent man was not sufficient notice to Young. *Id.* Compare *State v. Holmes*, 149 N.C. App. 572, 577, 562 S.E.2d 26, 30 (2002) (notification to defendant of duty to register was "sufficient notice for a reasonable and prudent person" and thus adequate to satisfy constitutional due process requirements where defendant had not been adjudicated incompetent).

Under *Young*, the question presented by this appeal is whether Article 27A of the General Statutes, although sufficient to supply notice to reasonable and prudent residents of North Carolina "[u]nder ordinary circumstances," *Young*, 140 N.C. App. at 8, 535 S.E.2d at 384, provides adequate notice for due process purposes to offenders moving into North Carolina from other states. To comply with *Lambert* and *Young*, due process requires either a showing of actual or constructive notice.

We first observe that defendant was not given actual notice of his duty to register by North Carolina authorities. The North Carolina sex offender registration statute lacks any provision for providing notice of the registration duty to new residents; its notice provisions are limited to defendants who are convicted in North Carolina courts and released from North Carolina prisons. In contrast, other states employ various procedures designed to notify new residents who are sex offenders of their duty to register. *See, e.g.*, N.J. Stat. § 2C:7-3 (1995) (in addition to notification by Department of Motor Vehicles ("DMV") upon application for a driver's license, requiring Attorney General to "cause notice of the obligation to register to be published in a manner reasonably calculated to reach the general public"); S.C. Code Ann. § 23-3-460 (2003) (requiring DMV to give written notice of the duty to register to any new resident who applies for a driver's license, chauffeur's license, vehicle tag, or state identification card); Tenn. Code Ann. § 40-39-105(e) (2003) (requiring state law enforce-

ment agency to "attempt to ensure that all sexual offenders, including those who move into this state, are informed and periodically reminded of the registration and verification requirements and sanctions of this chapter" through press releases, public service announcements, or other appropriate public information activities). North Carolina's statutory notice found sufficient in *Holmes* and held to be sufficient under ordinary circumstances in *Young* is inapplicable here because it does not encompass new residents of North Carolina.

*Young* and *Lambert*, however, both recognize that even in the absence of statutorily required notification, a defendant may have received sufficient notice through other means to comply with due process. The State contends that defendant received notice in South Carolina of his obligation to register in any new state to which he moved. We do not believe that South Carolina's notification procedures, as they existed during the pertinent time period, were sufficient to give defendant notice that he was required to register in North Carolina.

The State's witness Michael Stobbe, an employee with the Inmates Records Section of the South Carolina Department of Corrections ("SCDOC"), testified that a "Notice of Sex Offender Registry" form is routinely used to notify inmates being released from SCDOC custody of their duty to register. The inmate signs and dates the form, and an employee witnesses the form. In this case, the form was duly signed by defendant on 20 March 2000. The form stated, in pertinent part:

> Pursuant to Section 23-3-430 of [the] Code of Laws of South Carolina, any person who has been convicted, pled guilty or nolo contendere of offenses deemed sexual in nature must register with the Sheriff's Office in their county of residence. . . .

> Inmates being released from the South Carolina Department of Corrections at the completion of their sentence to any early release program, to community supervision, or upon parole must register with the Sheriff's Office in their county of residence within 24 hours of release.

> If an inmate who is required to register moves out of the State of South Carolina, s/he is required to provide written notice to the county sheriff where s/he was last registered in South Carolina within 10 days of the change of address to a new state.

A person must send written notice of change of address to the county Sheriff's Office in the new county and the county where s/he previously resided within 10 days of moving to a new residence. Any person required to register under this program shall be required to register annually for life.

The form specified that defendant had been informed orally and in writing that he was required to "abide by the registry conditions set forth in Title 23, Chapter 3, Article 7 [of the South Carolina Code]." There was no reference to the laws of any other state.

With respect to offenders moving out of South Carolina to another state, SCDOC's "Notice of Sex Offender Registry" form gives clear notice only of a duty to report the move to the Sheriff's Office in the former county of residence. Although in addition to requiring that notice, the form contains a separate paragraph referring to a duty to inform the Sheriff's Office in "the new county," the form is ambiguous as to whether "the new county" means only a county within South Carolina or also applies to counties within a new state. This form should be construed with reference to the statute on which it is modeled, which provides:

If any person required to register under this article changes his address into *another county in South Carolina*, the person must register with the county sheriff in the new county within ten days of establishing the new residence. The person must also provide written notice within ten days of the change of address in the previous county to the county sheriff with whom the person last registered.

S.C. Code Ann. § 23-3-460 (emphasis added). The statute contains no like provision for moves outside South Carolina. The statute thus suggests that the "the new county" referred to in the form means a new county within South Carolina. In order to find notice, we would have to conclude that an offender in South Carolina would construe a form in a manner inconsistent with the statute on which it was based. We are unwilling to do so.

Although *Young* and *White* hold that notice may also be received orally, the record contains no indication that defendant had been told by anyone of his need to register in any state to which he moved. Stobbe admitted that he did not know whether anyone read the form to defendant. The form, in any event, states only that defendant was orally advised of the requirement that he comply with South Carolina law. Detective Wilkinson, who interviewed defendant in

March 2001, testified only that when she asked defendant, "Why have you not bothered to register in the State of North Carolina?" he "had no real answer for that"—a response arguably consistent with a lack of knowledge. Detective Wilkinson acknowledged that defendant never gave any indication that he knew he had to register in North Carolina.

The State alternatively contends that defendant had constructive notice of his duty to register. The State argues, citing a New York trial court decision, *People v. Patterson*, 185 Misc. 2d 519, 708 N.Y.S.2d 815 (2000), that sex offender registration laws are so pervasive that defendant must have known that he was required to register in other states. The court observed in *Patterson* that "[a]s time goes on and these State laws lose their novelty, it will be increasingly difficult to say that sex offenders do not have fair warning that sex offender registration laws exist, even in the absence of mandatory individual notice requirements like those set out in [the New York statute]." *Id.* at 534 n.5, 708 N.Y.S.2d at 826 n.5. We do not, however, believe that mere knowledge that most states have registration requirements is sufficient today to establish knowledge that an offender must register in states other than the one in which he was originally convicted.

In this regard, it is significant that in 1997, the federal Jacob Wetterling Act, 42 U.S.C. § 14071 (2003),[1] was amended to provide that in order to have an approved state registration program, state officials must

> inform the person that if the person changes residence to another State, the person shall report the change of address as provided by State law and comply with any registration requirement in the new State of residence, and inform the person that the person must also register in a State where the person is employed, carries on a vocation, or is a student.

42 U.S.C. § 14071(b)(1)(A)(iii) (as amended Nov. 26, 1997, P.L. 105-119, Title I, § 115(a)(1)-(5), 111 Stat. 2461). States were granted three years from 26 November 1997 to comply with this change. P.L. 105-119, Title I, § 115(c), 111 Stat. 2467. The fact that Congress found it necessary to amend the Jacob Wetterling Act to clarify that state officials are required to inform an offender of his duty to register in a new state shows that sex offender registration laws have not yet achieved such general recognition among the public that a defendant

---

1. The Jacob Wetterling Act ties federal funding for crime control to enactment of sex offender registration programs by the states. *See* 42 U.S.C. § 14071(g)(2)(a).

may be charged with knowledge of a duty to register upon moving to a new state.

We note that had South Carolina officials complied with the mandate of 42 U.S.C. § 14071(b)(1)(A)(iii), or had the North Carolina legislature enacted a provision requiring state officials to inform new residents with reportable convictions of their duty to register, this defendant's due process argument would likely have failed. As written, our current sex offender registration statute does not adequately address the reality of our mobile society, in which people frequently move across state lines. Our General Assembly should revisit this statute to provide a procedure enabling the State to ensure that convicted sex offenders who move to North Carolina from another state comply with North Carolina's registration requirements.

We hold that N.C. Gen. Stat. § 14-208.11 is unconstitutional as applied to a person convicted in another state who has moved to North Carolina and lacks notice of his duty to register in North Carolina. Defendant's conviction under N.C. Gen. Stat. § 14-208.11 must, therefore, be reversed. As defendant's habitual felon conviction was dependent on that conviction, it too must be reversed. Because of our disposition of this matter, we need not address defendant's remaining assignments of error.

Reversed.

Judges McGEE and HUNTER concur.