MODIFIED: APRIL 27, 2009
RENDERED: APRIL 23, 2009
TO BE PUBLISHED

# Supreme Court of Kentucky



2005-SC-000539-DG
2005-SC-000930-DG

DATE 5/14/09 Kelly Klaber D.C.

COMMONWEALTH OF KENTUCKY          APPELLANT/CROSS-APPELLEE

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2003-CA-001843-MR
MONTGOMERY CIRCUIT COURT NO. 01-CR-00069

KENNETH McBRIDE                    APPELLEE/CROSS-APPELLANT

**OPINION OF THE COURT BY SPECIAL JUSTICE MARK C. WHITLOW**

**REVERSING**

This case involves the interpretation of the Kentucky Sexual Offender Registration Act which was in effect in 2001. The Kentucky General Assembly subsequently has amended this Act, in part, to clarify some of the issues raised in this case.

On November 12, 1999, Appellee, Kenneth McBride (hereinafter referred to as "McBride"), was convicted in a Tennessee court of the felony offense of sexual battery and was sentenced to two years in confinement. In late January 2001, McBride moved from Tennessee to Mount Sterling, Kentucky, and began working at Fast Change Lube Oil. In March 2001, Sergeant David Charles, of the Mount Sterling Police Department, learned that McBride was registered as

a sex offender in Tennessee and was now living in Mount Sterling and working at a quick change lube company in town. It is undisputed that in March of 2001, McBride was not registered as a sex offender in Kentucky.

On May 11, 2001, McBride was indicted, pursuant to KRS 17.510(7), for failure to register as a sex offender in Kentucky on March 13, 2001. McBride did not register in Kentucky as a sex offender until May 7, 2001. His case was tried before a jury on August 20, 2003. He was found guilty and sentenced to four years' imprisonment.

McBride appealed his conviction to the Kentucky Court of Appeals, which reversed the judgment of conviction by a vote of 2-1. The majority held that because McBride was not given notice of the duty to register as a sex offender in Kentucky as required by due process and KRS 17.510(6), his conviction could not stand. In addition, the Court of Appeals held that implicit in the statute is a *mens rea* element requiring that McBride had to act knowingly. The Court of Appeals concluded that the trial court erred in refusing to include a culpable mental state provision in the jury instructions.

The Commonwealth moved for discretionary review which this Court granted. A cross-motion for discretionary review also was granted. Having reviewed the record and applicable law, this Court now reverses the decision of the Kentucky Court of Appeals and reinstates the conviction of McBride.

The Commonwealth and McBride raise several issues regarding the facts and law of this case. The basic disagreement between the parties is whether KRS 17.510(6) or KRS 17.150(7) applies to McBride's situation. The language of each section of the statute as it existed in 2001 appears in a footnote to this opinion.[1] The proper interpretation of this statute resolves most issues raised by the parties.

The construction and application of statutes is a matter of law. Therefore, this Court reviews statutes *de novo* without deference to the interpretations adopted by lower courts. Wheeler & Clevenger Oil Company, Inc. v. Washburn, 127 S.W.3d 609, 612 (Ky. 2004). A basic rule in statutory interpretation is that the "plain meaning" of the statute controls. Executive Branch Ethics Commission v. Stephens, 92 S.W.3d 69, 73 (Ky. 2002). This

---

[1] KRS 17.510(6) - "Any person who has been convicted in a court of another state . . . of a sex crime or criminal offense against a victim who is a minor, or who has been committed as a sexually violent predator under the laws of another state . . . shall be informed at the time of his or her relocation to Kentucky of the duty to register under this section, and to comply with the requirements of subsection (4)(b) of this section, by the interstate compact officer of the Department of Corrections or the Department of Juvenile Justice. The officer shall require the person to read and sign any form that may be required by the cabinet, stating that the duty of the person to register under this section has been explained. The officer shall order the person to complete the registration form, and the officer shall facilitate the registration process. The officer shall then send the form, including any special conditions imposed by the court or the Parole Board in the state of conviction to the Information Services Center, Kentucky State Police, Frankfort, Kentucky 40601, and to the appropriate local probation and parole office in the county of the registrant's residence."

KRS 17.510(7) - "If a person is required to register under federal law or the laws of another state or territory, or if the person has been convicted of an offense under the laws of another state or territory that would require registration if committed in this Commonwealth, that person upon changing residence from the other state or territory of the United States to the Commonwealth or upon entering the Commonwealth for employment, to carry on a vocation, or as a student shall comply with the registration requirement of this section and the requirements of subsection (4)(b) of this section and shall register with the appropriate local probation and parole office in the county of employment, vocation, or schooling. As used in this section, "employment" or "carry on a vocation" includes employment that is full-time or part-time for a period exceeding fourteen (14) days or for an aggregate period of time exceeding thirty (30) days during any calendar year, whether financially compensated, volunteered, or for the purpose of government or educational benefit. . . ."

3

rule also seeks to interpret the statute in accordance with the legislative intent. Commonwealth v. Plowman, 86 S.W.3d 47, 49 (Ky. 2002).

McBride was charged under section (7) of KRS 17.510. This statute provided that "a person [who] is required to register under . . . the laws of another state . . . upon changing residence from the other state . . . to the Commonwealth . . . shall comply with the registration requirement of this section and the requirements of subsection (4)(b) of this section [.]" In contrast, KRS 17.510(6) required the interstate compact officer of Kentucky's Department of Corrections or Department of Juvenile Justice to inform a sex offender "at the time of his . . . relocation to Kentucky of the duty to register under this section, and to comply with the requirements of subsection (4)(b) of this section. . . ."

The Court of Appeals summarized the difference between these two sections by stating "[e]ssentially, section (6) puts the onus on Kentucky to give notice of the duty to register in Kentucky and then to assist the individual in registering, while section (7) puts the onus on the individual to register in Kentucky." McBride v. Commonwealth, 2005 WL 1367463 (Ky.App. 2005). The court resolved this alleged conflict by concluding that due process requires that an individual receive notice of a duty to register as a sex offender in Kentucky before he has a duty to so register in Kentucky. McBride received no notice from the Commonwealth regarding his duty to register as a sex offender.

4

Therefore, because the Commonwealth failed to inform McBride of his duty to register, it was improper to convict him.

The Court of Appeals' majority relied, in part, upon the case of Lambert v. People of State of California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957). In that case, the Untied States Supreme Court determined whether a municipal ordinance imposing a registration requirement on convicted felons who remained in the city for more than five days violated due process. The Court concluded that those charged under the ordinance must have actual knowledge of the duty to register or proof of the probability of such knowledge before they could be charged with failing to register under the ordinance. Id. at 229. The Court of Appeals observed that the Supreme Court's decision turned on three factors: (1) the conduct was passive; (2) the individual's status as a convicted felon would not, in itself, put the individual on notice to inquire as to the applicable law; and (3) the law was enacted solely for the convenience in compiling a list which might be of some assistance to law enforcement agencies.

The Court of Appeals' majority also found support in the case of State v. Bryant, 163 N.C.App. 478, 594 S.Ed.2d 202 (2004) in which the North Carolina Court of Appeals considered a factual situation nearly identical to the one in the present case. Relying upon Lambert, the North Carolina Court of Appeals struck down the North Carolina sex offender registration statute as

5

unconstitutional as applied to sex offenders convicted in other states who moved to North Carolina. The Court held that due process requires either actual or constructive notice to the out-of-state offender moving to North Carolina of the requirement to register before he can be convicted of failing to register in North Carolina.

After the Court of Appeals issued its decision in this case, the Supreme Court of North Carolina reversed the Bryant decision in the case of State of North Carolina v. Bryant, 359 N.C. 554, 614 S.E.2d 479 (2005). The North Carolina Supreme Court, consistent with this Court's observations in Hyatt v. Commonwealth, 72 S.W.3d 566 (Ky. 2002), emphasized the public safety concerns implicit within the sex offender registration acts. Such laws are widespread: "[b]y 1996 every state, the District of Columbia and the Federal Government had enacted some variation of [a sex offender registration and community notification program]. . . ." Smith v. Doe, 538 U.S. 84, 90, 123 S.Ct. 1140, 155 L.Ed.2d 164, 175 (2003). Thus, convicted sex offenders had been subject to registration throughout the fifty states for approximately six years when, in 2001, defendant McBride and the defendant in the North Carolina case were arrested for failing to register as a convicted sex offender in their respective states.

Given the pervasive presence and age of sex offender registration statutes, the North Carolina Supreme Court concluded that North Carolina's

sex registration law was not affected by the Supreme Court case of <u>Lambert</u>, <u>supra.</u> To be entitled to relief under the narrow <u>Lambert</u> exception, a defendant must establish that his conduct was "wholly passive" such that "circumstances which might move one to inquire as to the necessity of registration are completely lacking" and that the defendant was ignorant of his duty to register and there was no reasonable probability that the defendant knew his conduct was illegal. <u>Lambert</u>, <u>supra.</u>, 355 U.S. at 228-29, 78 S.Ct. at 243-44, 2 L.Ed.2d at 231-32.

Unlike the registration requirement in <u>Lambert</u>, the sex registration statutes are directed at a narrow class of defendants, convicted sex offenders, rather than all felons. These registration programs were specifically enacted as public safety measures based upon legislative determinations that convicted sex offenders pose an unacceptable risk to the general public once released from incarceration. Significantly, a sex offender has actual notice of his lifelong duty to register with the state of his conviction. Based upon these facts, the North Carolina Supreme Court believed that a convicted sex offender's failure to inquire into a state's registration obligations is neither entirely innocent nor wholly passive. <u>Bryant</u>, <u>supra.</u>, 614 S.E.2d at 488. In upholding the North Carolina sex registration act, the North Carolina Supreme Court stated as follows:

> it would be nonsensical to allow sex offenders to
> escape their duty to register by moving to a state that

7

has not provided them with actual notice of their duty
to register, and then claim ignorance of the law.

Id. at 488.

KRS 17.510(6) and (7) can be interpreted in a manner which makes both

effective and complementary.  As the dissenting opinion of Judge Johnson

notes, an interstate compact officer who is to inform a sex offender to register

must have knowledge that the sex offender has entered the Commonwealth

under subsection (6).  Once the officer has notice of the presence of the sex

offender, he is required to inform the sex offender of an obligation to sign forms

and then send the appropriate documents to specific offices.  This Court agrees

with Judge Johnson's belief that

> the legislative intent of subsection (6) is to require the
> responsible Kentucky officials to follow certain
> procedures to ensure that the registration of sex
> offenders is timely and effectively completed.
> Subsection (6) was not enacted to give a right of notice
> to a sex offender, but for the sole purpose of
> facilitating the effective administration of the statute.
> This interpretation comports with the overall purpose
> of the statute to protect citizens of Kentucky from sex
> offenders.

McBride v. Commonwealth, supra., Johnson, dissenting.

This Court concludes that McBride was properly convicted under KRS

17.510(7).  McBride argues that there was no proof that his alleged Tennessee

sex crime begetting registrant status was similar to a qualifying felony offense

under Kentucky law.  It is true that KRS 17.510(7) applies in such a situation,

8

but it is also true that the statute applies "if a person is required to register under federal law or the laws of another state or territory . . . ." KRS 17.510(7). At trial, the Commonwealth called officer Rudd Kerr of the Kentucky State Police (hereinafter referred to as "KSP"), who was in charge of the KSP sex offender unit which manages the sex offender registry. Officer Kerr testified that, according to his records, McBride was registered as a sex offender in Tennessee in March of 2001. Additionally, McBride's girlfriend in March of 2001, Darnella Bradley, testified that at one point after McBride moved in with her in January 2001, she opened up McBride's address book and saw McBride's Tennessee sex offender registration identification card. The above evidence was sufficient proof that McBride was required to register as a sex offender in Tennessee and, therefore, was subject to the plain meaning of KRS 17.510(7).

McBride next claims that he was not given notice of the duty to register as required by KRS 17.510(6). This is true but irrelevant. This Court has concluded that McBride had an absolute duty to register as a sex offender once he became a resident of Kentucky as required by KRS 17.510(7). The statute which was the basis of McBride's conviction, KRS 17.510(7), does not require that the Commonwealth provide him notice of his duty to register.

Likewise, KRS 17.510(7) does not require a *mens rea* element specifically requiring that the jury find that McBride "knowingly" failed to register as a sex

offender in Kentucky. Failing to register as a sex offender under KRS 17.510(7) is an absolute liability crime. KRS 501.030 provides that a person is not guilty of a criminal offense unless he voluntarily engaged in the conduct, and that he engaged in such conduct intentionally, knowingly, wantonly or recklessly as the law may require. However, a person may be guilty of an offense without having a culpable state of mind when "[t]he offense is defined by a statute other than this Penal Code and the statute clearly indicates a legislative purpose to impose absolute liability for the conduct described." KRS 501.050(2).

KRS 17.510 does not just set forth one felony offense. Under KRS 17.510(11), it is a Class D felony for "[a]ny person required to register under this section" to violate any provisions of this section. Under KRS 17.510(12), it is a Class D felony for any person required to register to "knowingly" provide false, misleading or incomplete information. There would be no reason for a knowing *mens rea* to be stated in KRS 17.510(12) if there was not absolute liability under KRS 17.510(11). As the Kentucky Court of Appeals has noted,

> [w]here particular language is used in one section of a statute, but omitted in another section of the same statute, it is presumed that the legislature acted intentionally and purposefully in the disparate inclusion or exclusion.

Liquor Outlet, LLC v. Alcoholic Beverage Control Board, 141 S.W.3d 378, 385 (Ky.App. 2004), citing Palmer v. Commonwealth, 3 S.W.3d 763 (Ky.App. 1999).

The legislature's use of the culpable mental state "knowingly" in KRS 17.510(12) underscores the legislature's intent that there is absolute liability under KRS 17.150(11), a subsection without any reference to *mens rea.*

McBride claims that KRS 17.510(7) is unconstitutionally vague because it does not define "residence." Under the void-for-vagueness doctrine, a statute is not unconstitutionally vague if it contains sufficient definiteness such that ordinary people can understand what conduct is prohibited. Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Additionally, the doctrine requires that the statute be worded so as to not encourage arbitrary or discriminatory enforcement. Id. Every term in a statute need not be defined, and terms that are not defined are to be accorded their common, everyday meaning. United States v. Haun, 90 F.3d 1096 (6th Cir. 1996), cert. denied, 519 U.S. 1059, 117 S.Ct. 691, 136 L.Ed.2d 614 (1997) (holding that the term "proceeds" was not unconstitutionally vague in money laundering statute). "Residence" is defined as "the act or fact of dwelling in a place for some time." Merriam-Webster's Collegiate Dictionary 993 (10th Ed. 2001). The language of KRS 17.510(7) was sufficiently definite to put McBride on notice that if he failed to register as a sex offender when he changed his place of dwelling from Tennessee, where he was registered as a sex offender, to Kentucky, he would be guilty of the offense therein.

11

McBride characterizes the testimony of Officer Kerr and an exhibit from the Tennessee Bureau of Investigation as inadmissible hearsay. Officer Kerr testified, in part, that (1) McBride was required to register in Kentucky because according to a form that Kerr received by fax from the Tennessee Bureau of Investigation, McBride had been registered as a sex offender in Tennessee; (2) the form bore what was purportedly McBride's signature and a date of February 2, 2000; and (3) the form stated that McBride was obligated to notify the Tennessee Bureau of Corrections of any information or changes lasting more than ten days or be subject to penalties under law.

This claim of error was not preserved by contemporaneous objection. RCr 9.22. Rather, the objection came more than an hour and a half after the witness had been released. The objection came not only after the Court had released the witness but also after the Commonwealth had closed its case. Further review is not warranted. West v. Commonwealth, 780 S.W.2d 600 (Ky. 1989). Even if such testimony and exhibit constituted hearsay, it was harmless error to admit them because other admissible evidence in the case clearly demonstrated that McBride was a registered sex offender in Tennessee. His former girlfriend, Darnella Bradley, had testified that she was aware that McBride was a registered sex offender and that McBride had a Tennessee registered sex offender identification card. Detective Sergeant Charles, without objection, also testified that McBride was a registered sex offender in

Tennessee. The admission of Officer Kerr's testimony and the exhibit from the Tennessee Bureau of Investigation were cumulative and therefore harmless error. The admission of such evidence did not have a reasonable possibility of contributing to the conviction. Anderson v. Commonwealth, 231 S.W.3d 117, 122 (Ky. 2007).

McBride claims error in the admission of the testimony of Gerald Ledford who testified from Fast Change Lube records that McBride was an employee of that company in February and March 2001. Mr. Ledford was not employed at the business when McBride worked there, but Ledford testified from the business records of the facility. The error of admitting such testimony was harmless and not reversible under RCr 9.24. Mr. Ledford's statements were confirmed by Sergeant Charles with the Mount Sterling Police Department who stated without objection that McBride was employed at the quick change lube in that community. McBride's former girlfriend also testified without objection that he had a job at the quick change on the bypass and had been living with her for some time. The fact that McBride worked at the quick lube was well established. The admission of Gerald Ledford's cumulative testimony was harmless error.

Finally, McBride argues that the judgment against him must be vacated for want of jurisdiction. He was indicted as a felon under the 2000 version of the Sex Offender Registration Act. In Peterson v. Shake, 120 S.W.3d 707 (Ky.

13

2003), it was held that KRS 17.510(11), as amended in 2000, is inapplicable to anyone who had acquired the status of registrant before its effective date of April 11, 2000. The court further held that those violating registrant requirements after April 11, 2000, but who had acquired registrant status before that date, can only be prosecuted for a Class A misdemeanor. The Circuit Court would have no jurisdiction unless such a charge is joined with a felony.

Although McBride was convicted in Tennessee in 1999, he would not have acquired registrant status under KRS 17.510 until he changed his residency from Tennessee to Kentucky. McBride moved to Kentucky in January 2001, nine months after the effective date of the amended KRS 17.510(11). Therefore, McBride was properly charged and convicted under the amended statute, as that is the version applicable at the time he should have registered in Kentucky.

For the foregoing reasons, the opinion of the Court of Appeals is REVERSED and the jury verdict rendered in the Montgomery Circuit Court is REINSTATED.

Minton, C.J.; Scott and Venters, JJ., concur. Noble, J. concurs in part and dissents in part by separate opinion in which Abramson, J. and Special Justice Jeffrey C. Mando, joins. Cunningham and Schroder, JJ., not sitting.

**COMMONWEALTH OF KENTUCKY V. KENNETH MCBRIDE, 2005-SC-000539-DG and 2005-SC-000930-DG:**

<u>**JUSTICE NOBLE, CONCURRING IN PART AND DISSENTING IN PART:**</u>

I agree with the majority that Appellee McBride had a duty to at least instigate an inquiry about proper registration procedures in Kentucky. Before he can effectively take all the steps required by the registration statute, KRS 17.510, officials must first know that the convicted sex offender has moved to Kentucky. And while the interstate compact may end up sending that information to Kentucky, this fact is certainly known by the convicted offender, whereas officials have little or no ability to ascertain it independently. Add to that the fact that Appellee had a sex offender identification card from another state which indicated his knowledge of a registration requirement, and it is apparent that the offender should, and does, have the burden of going forward with notice to the state where he has relocated. In fact, the statute now specifically requires it, though it was a reasonable burden before the latest amendment.

Where I depart from the majority is with its view that Appellee is subject to a <u>felony</u> charge for his failure to notify proper authorities of his relocation to Kentucky. Under the current version of the statute, and the one in place in 1998, convicted sex offenders are required to register with the appropriate

authorities after their <u>release from confinement.</u> (Within ten days in 1998; five days after 2000). Thereafter, if their residence address changes, they must register where they then reside. In 1998, the failure to register was a Class A misdemeanor offense. Since April 11, 2000, it has been a Class D felony offense.

In 2003, this Court held in <u>Peterson v. Shake</u>, 120 S.W.3d 707 (Ky. 2003) that where an offender was released from prison and registered as a sex offender before the 2000 version of KRS 17.510 became effective, the offender was subject to the earlier version of the statute which set the penalty for a violation of the statute as a Class A misdemeanor. Peterson had registered as a sex offender in 1999, on his release from custody. However, in 2001, Peterson relocated without notifying authorities of his new address. He was charged with failure to register, as a Class D felony, which was the penalty in the version of the statute then in effect. He sought a writ of prohibition to prevent the circuit court from proceeding with a felony trial against him, claiming that he had already registered prior to enactment of this penalty, and that while he had violated the statute by failing to re-register when he moved, he could only be charged with a misdemeanor, the penalty in effect when he was released from custody and initially registered. This Court agreed with him, and issued the writ declaring that the circuit court had no jurisdiction to proceed against Peterson absent a felony charge to which the failure to register

could be pendent.

In its reasoning, this Court pointed out that Peterson could not "become" a registrant, because he already was one, and that the plain language of the 2000 amendment made it clear that it was intended to apply to new registrants, not those who had already been registered. The fact that Peterson was a violator under the present version of the statute did not mean that the penalty could be changed because he had secured his release before the current version of the statute was enacted. To further clarify, I would say that the primary question is whether one already is a registrant versus if one is just re-registering in a new place.

The 1998 version of the statute, which applies to Appellee as it applied to Peterson, carried a Class A misdemeanor penalty, and required a person moving to this state to register if the person was "required to register as a sex offender under . . . the laws of another state . . . ." The prefatory language, "required to register as a sex offender under . . . the laws of another state," proves the obvious: that Appellee was already a registrant. The only difference between him and Peterson is that Peterson first registered in Kentucky, while Appellee first registered in Tennessee. As the record makes equally obvious, it is not difficult to determine the date when Appellee was released from confinement and registered in Tennessee. There is nothing in the statute that requires a registrant from another state to be treated differently than a

registrant from Kentucky, nor could such be supportable under federal constitutional principles.

Abramson, J., and Special Justice Jeffrey C. Mando, join.


**COUNSEL FOR APPELLANT/CROSS-APPELLEE:**

JACK CONWAY
ATTORNEY GENERAL OF KENTUCKY

HONORABLE GREGORY C. FUCHS
OFFICE OF ATTORNEY GENERAL
CRIMINAL APPELLATE DIVISION
1024 CAPITAL CENTER DRIVE
FRANKFORT, KY. 40601-8204


**COUNSEL FOR APPELLEE/CROSS-APPELLANT:**

HONORABLE IRVIN J. HALBLEIB, JR.
P.O. BOX 16175
LOUISVILLE, KY. 40256

# Supreme Court of Kentucky

2005-SC-000539-DG
2005-SC-000930-DG

COMMONWEALTH OF KENTUCKY                 APPELLANT/CROSS-APPELLEE

ON REVIEW FROM THE COURT OF APPEALS
V.                     CASE NO. 2003-CA-001843-MR
MONTGOMERY CIRCUIT COURT NO. 01-CR-00069

KENNETH McBRIDE

APPELLEE/CROSS-APPELLANT

## ORDER

The Opinion of the Court rendered April 23, 2009, is corrected on its face

by substitution of the attached pages 1 and 18 in lieu of pages 1 and 18 of the

original opinion. Said correction does not affect the holding of the original

Opinion of the Court.

ENTERED: April 27, 2009

_____
CHIEF JUSTICE