v.

**CABINET FOR HEALTH AND FAMILY SERVICES, Commonwealth of Kentucky; A.M.R., a Minor Child; and J.A.R., Appellees**

**NO. 2015-CA-001746-ME**

Court of Appeals of Kentucky.

NOVEMBER 4, 2016; 10:00 A.M.

BRIEF FOR APPELLANT: Kenneth L. McCardwell, Louisville, Kentucky

BRIEF FOR APPELLEE, CABINET FOR HEALTH AND FAMILY SERVICES: Barbara M. Gunther, Shelbyville, Kentucky

BEFORE: MAZE, TAYLOR, AND VANMETER, JUDGES.

## OPINION

MAZE, JUDGE:

K.M.J. (hereinafter "Mother") appeals from an order of the Henry Circuit Court terminating her parental rights to her daughter. Mother argues that the trial court lacked jurisdiction to enter the order terminating her parental rights. In the alternative, she argues that the trial court deprived her of adequate notice and a meaningful opportunity to be heard, and therefore, due process of law.

We conclude that the trial court's decision to "defer" the matter of Mother's termination beyond the period provided in KRS[1] 625.090 was impermissible under the statute. Therefore, we vacate and remand.

### Background

At A.M.R.'s birth in August 2011, the child's meconium tested positive for marijuana. As a result, the Cabinet for Health and Family Services ("the Cabinet") inves-

---

1. Kentucky Revised Statutes.

tigated but elected against filing a Neglect and Abuse Petition. On March 4, 2012, the Cabinet received a second report concerning drug use in the presence of Mother, Father,[2] and A.M.R. The Cabinet investigated and filed a petition on behalf of the child which alleged that Mother and Father had caused A.M.R. to be neglected due to Father's drug use and a history of domestic violence between Mother and Father. At the Cabinet's request, the trial court entered an Emergency Custody Order which placed the child in the emergency custody of the Cabinet.

At a Temporary Removal Hearing two days later, the trial court granted the Cabinet temporary custody of A.M.R. Mother was permitted visitation with the child, now in the care of maternal relatives. At the March 21, 2012, adjudication hearing, the trial court entered findings of fact and conclusions of law that both parents had engaged in the use of illegal drugs while caring for A.M.R. In June 2012, the trial court committed the child to the custody of Cabinet; however, in January 2013, it returned custody of A.M.R. to Mother.

Mother gave birth to a second child on February 9, 2013. Three months later, the Cabinet filed a second Neglect and Abuse Petition concerning A.M.R. which also concerned her infant brother. The petition alleged that A.M.R. and her brother regularly arrived at day care dirty, that Mother and Father had a history of drug use, and that, despite court orders that Father have only supervised contact with A.M.R. until compliant with the Cabinet, Mother and Father lived together and had moved four times in five months. Based on this petition, the trial court did not remove the children from Mother's home. However, Mother later stipulated that her actions caused the children to be neglected, and at

a subsequent dispositional hearing, the trial court again committed A.M.R. to the Cabinet's custody. At this point, it was still the Cabinet's goal to reunify A.M.R. with her parents.

In June 2013, after the children were apparently returned to Mother's care, the Cabinet filed a third Neglect and Abuse Petition after Mother reported an incident of domestic violence perpetrated by Father during which he assaulted Mother and threatened her repeatedly. The petition alleged that this incident took place in front of A.M.R. and her brother, placing both of them at risk of neglect and abuse. The trial court once again placed the children in the temporary custody of the Cabinet, and Mother once again stipulated that her continuing relationship with Father placed her children at risk of neglect. In March 2014, at the Cabinet's request, the trial court changed the permanency goal in both children's cases to "adoption."

Following the Cabinet's Petition for Involuntary Termination of Parental Rights against Mother and Father, the trial court conducted a trial on August 24, 2014. Following trial, the trial court entered an order terminating Father's parental rights; however, it passed the issue of termination of Mother's parental rights for a review six months later. The trial court deemed this action a "deferral of the pending action." In the interim, the trial court ordered the Cabinet to develop a new case plan and work with Mother "to rebuild her life" away from Father's influence.

At an April 2015 hearing, the trial court stated that it would conduct what it called "further hearings" on the question of terminating Mother's parental rights to her children, and the court continued the case another four months. Finally, in August

---

**2.** A 2014 Order terminated the parental rights of J.A.R., the child's father; however, he has

not appealed from that order and is not before the Court in this appeal.

2015, the trial court conducted what it labeled a "final hearing" following which it entered an order terminating Mother's rights to A.M.R. Mother now appeals from this October 23, 2015, order. Further facts will be recounted and addressed as they become necessary to our analysis.

### Analysis

Mother raises arguments based in both statute and procedure. We address Mother's jurisdictional argument first, as its resolution may prevent or otherwise affect our consideration of her second argument.

### I. Mother's Compliance with CR 76. 12(4)(c)(v)

 As a preliminary matter, the Cabinet argues that Mother's brief failed to comply with the mandate of CR 76.12(4)(c)(v) that an appellant state where in the record she preserved an issue for appeal. "[A]n appellate court cannot consider items that were not first presented to the trial court." *Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. 2012). Thus, CR 76.12(4)(c)(v) serves an important purpose. "It is not so much to ensure that opposing counsel can find the point at which the argument is preserved, it is so that we, the reviewing Court, can be confident the issue was properly presented to the trial court...." *Id.* Past panels of this Court have held that "substantial compliance" with this rule is mandatory. *Id. See also Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990).

 The Cabinet is correct that Mother's brief fails to expressly state where she preserved the issues raised on appeal. Mother attempts to remedy this omission in her reply brief; however, this is not technically compliant with the Civil Rules. This being the case, our options are "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or

its offending portions ...; or (3) to review the issues raised in the brief for manifest justice only." *Briggs v. Kreutztrager*, 433 S.W.3d 355, 361 (Ky. App. 2014) (citation and quotation marks omitted). Given the tremendous import of this case which concerns a mother's parental rights to her child, we elect to look past this omission and proceed without sanction against Mother; and we do so with the confidence that Mother's counsel will more strictly comply with the mandate of CR 76.12 in future appeals.

### II. The Trial Court's Continuing Jurisdiction

 Mother first argues that following the August 24, 2014, initial trial on termination, the trial court was obligated to either terminate her parental rights or dismiss the Cabinet's petition. She contends that the trial court was divested of its jurisdiction when it did neither, instead passing, or "deferring," the case for a review. As a matter of statutory interpretation and construction, this is a question of law; and we review the trial court's decision *de novo. See, e.g., Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011) (citing *Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky. 2009)). In interpreting the procedural instruction provided in KRS 625.090(6), we do so in accordance with the plain meaning of that statute, *Love*, 334 S.W.3d at 93 (citing *McBride*, 281 S.W.3d at 803); and we construe non-technical words according to their common meanings. *Id.* at 93 (citing KRS 446.080(4)).

KRS 625.090(6) states that

[u]pon the conclusion of proof and argument of counsel, the Circuit Court shall enter findings of fact, conclusions of law, and a decision as to each parent-respondent within thirty (30) days either:

(a) Terminating the right of the parent; or

(b) Dismissing the petition and stating whether the child shall be returned to

the parent or shall remain in the custody of the state.

Mother argues that the "either ... or" language of the statute made its two options exclusive and mandatory. The Cabinet counters that the trial court's October 2014 order, by its very nature, was not "final and appealable," permitting the court to take subsequent, additional proof. Ultimately, we must agree with Mother that the procedural constraints of KRS 625.090 take precedence over the trial court's chosen method of extending the case beyond the initial termination trial.

The plain language of KRS 625.090(6) supports Mother's argument that the trial court was limited to the two options at the conclusion of the 2014 termination hearing. When we assign the mandatory language and non-technical terms of the statute their common meaning, it is clear that the trial court, having held that the Cabinet failed to prove an essential statutory element for termination, was compelled to dismiss the Petition as to Mother. Specifically, the terms "either" and "or" in KRS 625.090(6), combined with the lack of any other alternative outcome in the other parts of the statute, limited the trial court's options following trial. Additionally, the statute's use of the term "shall" rendered the trial court's selection between these options mandatory. While the Cabinet argues that proof was not closed, and hence the rigors of KRS 625.090(6) did not apply, the record reflects that the trial court took the matter under submission at the close of the 2014 trial. By any reasonable definition, proof was closed at that time, and the trial court's dispositional options were limited to the two provided in the statute.

Our reading of the statute not only best conforms to the language it uses; it also serves the express legislative goal of leaving children in state foster care and away from a stable family setting for as brief at time as possible. *See Cabinet for Families and Children v. G.C.W.*, 139 S.W.3d 172, 177 (Ky. App. 2004) (pointing to the Kentucky General Assembly's adoption and incorporation into KRS 625.090 of the time limits outlined in the federal Adoption and Safe Families Act of 1997). We do not believe it was the trial court's intention to prolong a tumultuous time in both Mother's and child's lives. On the contrary, we fully comprehend that the trial court was attempting to provide Mother one last chance to "rebuild her life" before termination of her parental rights. However, the procedure expressly outlined in KRS 625.090(6) did not permit the trial court's chosen means of accomplishing that noble goal.

Accordingly, without reaching Mother's second argument concerning notice and due process, we vacate the October 2015 Order terminating Mother's parental rights, and we remand to the trial court for entry of an order dismissing the Petition based upon that court's prior conclusion of law that the Cabinet failed at trial to prove an essential statutory element, "that there is no reasonable expectation of improvement in parental care and protection...." KRS 625.090(2)(e). The Cabinet, of course, may bring a new petition if it believes termination remains in the child's best interest.

## Conclusion

The October 23, 2015, Order terminating Mother's parental rights to A.M.R. is vacated, and the matter is remanded for entry of an order dismissing that Cabinet's Petition for Involuntary Termination of Parental Rights.

ALL CONCUR