RENDERED: DECEMBER 19, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0886-ME

WILLIAM VARNER                                               APPELLANT

v.              APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE LORI N. GOODWIN, JUDGE
ACTION NO. 24-D-501816-003

ABAGAIL VARNER; H.C.V., A                       APPELLEES
MINOR CHILD; AND K.L.V., A
MINOR CHILD

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

THOMPSON, CHIEF JUDGE: William Varner (Appellant) appeals from a domestic violence order (DVO) entered by the Jefferson Circuit Court on June 18, 2025. Appellant argues that the circuit court erred in entering the DVO because the petitioner, Abagail Varner (Appellee), failed to prove acts of domestic violence and abuse as defined by Kentucky Revised Statutes (KRS) 403.720(2). He also

argues that the DVO was improperly based on fear created by third parties rather than his acts; that the court improperly relied on hearsay; and, that the court erred in extending the DVO to the parties' minor children when there was no evidence of domestic violence directed toward them. He requests an opinion reversing the DVO and remanding the matter with instructions to dismiss the petition. After careful review, we find no abuse of discretion and affirm the DVO on appeal.

## **FACTS AND PROCEDURAL HISTORY**

Appellant and Appellee were previously married and have two minor children. In 2024, Appellee sought and received an Emergency Protective Order (EPO) in Jefferson Circuit Court on behalf of herself and the children. The EPO was based on Appellee's allegation that Appellant was physically violent; prevented her from leaving the home; that Appellant was carrying a firearm around the home which made her afraid for her safety and that of their children; and, that Appellant had acted in a violent manner and destroyed items of personal property.

Prior to the hearing on the 2024 DVO petition, the parties tendered an agreed order dismissing the petition on the condition that Appellant undertake mental health counseling; relinquish his firearms; have supervised child visitation; and, communicate with Appellee through a co-parenting application.

On January 22, 2025, Appellee was granted a second EPO based on her claim that Appellant had engaged in additional acts of domestic violence after

the dismissal of her first petition. The 2025 petition adopted the statements made in her 2024 petition.

Thereafter, a Guardian *ad Litem* was appointed, and a domestic violence hearing was conducted on June 3, 2025. The court heard testimony from the following: David Waters, the clinical director of Crossroads Counseling in Lexington, Kentucky; Lakyn Collins, a graduate student and Crossroads counselor; Appellant; and Appellee. Mr. Waters did not directly treat Appellant, but opined that based on his review of Appellant's counseling record, Appellant had a pattern of abusive behavior so noteworthy that Mr. Waters felt compelled to warn Appellee's counsel of the danger presented to Appellee. When asked why Mr. Waters did not call the police, Mr. Waters stated that the threat to Appellee was general in nature and not imminent.

Ms. Collins was directly involved in counselling Appellant when she was a graduate student clinician. She was supervised by Mr. Waters. Ms. Collins testified that Appellant acknowledged going to Appellee's home uninvited and ransacking it. As part of her counseling with Appellant, Ms. Collins became aware of pictures and videos of Appellee secretly taken by Appellant, some of which showed Appellee smoking marijuana and having sex. Appellant spoke to Ms. Collins several times about getting "payback" against Appellee.

Appellee also testified and recounted what is described in the circuit court's notes as an "escalating, chaotic environment in the home" preceding both the 2024 and 2025 petitions. Appellee stated that there were arguments during which Appellant would carry a gun around the home, and that Appellant left guns and ammunition in various places around the home. Appellee saw Appellant pacing around the house with a gun, which is what prompted her to seek the 2024 protective order. She stated that Appellant would damage property around the house, throw things, and punch holes in doors and walls.

Appellee testified that after the 2024 petition was dismissed, Appellant would come to Appellee's house in the middle of the night. She also testified that Appellant would contact her friends on social media to discuss the divorce and claim that she was an alcoholic. Appellee stated that she had her home "swept" for hidden audio or video devices and discovered a hidden video camera connected to a hard drive. That hard drive contained pictures and video of Appellee recorded without her knowledge, and according to Appellee the matter was referred to law enforcement resulting in felony harassment and stalking charges being brought against Appellant. Appellee recounted many other instances of Appellant being violent in front of the children, that he has damaged the house in front of the children and that one of the children was in therapy for a year.

Finally, Appellant testified. He stated that Appellee would invite him over to her house after the 2024 petition was dismissed. Appellant said he had participated in 30 or 40 counseling sessions; that Ms. Collins' therapy notes are not accurate; and, that he never made any threats to Ms. Collins about hurting Appellee or the children.

After considering the testimony and the record, the court determined that Appellee established by a preponderance of the evidence that acts of domestic violence and abuse occurred and may occur again. The court entered the DVO, which barred Appellant from having contact with Appellee or the children, and directed Appellant not to obtain or possess any firearms. This appeal followed.

## STANDARD OF REVIEW

On review of a domestic violence order, the question is not whether we would have decided the matter differently. *Gibson v. Campbell-Marletta*, 503 S.W.3d 186, 190 (Ky. App. 2016). Rather, we must determine if the circuit court's findings were clearly erroneous and if the decision constituted an abuse of discretion. *Id.* An abuse of discretion occurs if the trial court's ruling is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

## ARGUMENTS AND ANALYSIS

Appellant first argues that the Jefferson Circuit Court erred in entering the DVO because Appellee failed to prove any acts of domestic violence and abuse, as defined by KRS 403.720(2), occurred. As part of this argument, Appellant maintains that the circuit court also erred by basing the DVO on fear created by third parties rather than any act by Appellant.

Appellant asserts that to obtain a DVO, Kentucky law unequivocally requires that the petitioner prove by a preponderance of the evidence that domestic violence and abuse has occurred and may occur again. He directs our attention to KRS 403.720(2), which states,

> "Domestic violence and abuse" means:
>
> (a) Physical injury, serious physical injury, stalking, sexual abuse, strangulation, assault, or the infliction of fear of imminent physical injury, serious physical injury, sexual abuse, strangulation, or assault between family members or members of an unmarried couple[.]

Appellant argues that Appellee presented no evidence that he committed domestic violence and abuse as defined by KRS 403.720(2), and that the court improperly relied on the unsupported opinion testimony of Mr. Waters as a basis for granting the order. There being no proof of domestic violence and abuse, Appellant contends that the DVO was improperly entered and that he is entitled to an opinion vacating the order on appeal.

-6-

The circuit court may issue a DVO if it finds by a preponderance of the evidence that domestic violence and abuse has occurred and may again occur. KRS 403.740(1). In the context of domestic violence analysis, preponderance of the evidence means that the alleged victim was "more likely than not to have been a victim of domestic violence." *Commonwealth v. Anderson*, 934 S.W.2d 276, 278 (Ky. 1996). The question for our consideration, then, is whether the evidence presented at the DVO hearing demonstrated that it was more likely than not that domestic violence and abuse has occurred and may again occur.

Stalking is defined as an intentional course of conduct directed at a specific person or persons which seriously alarms, annoys, intimidates, or harasses the person or persons, and which serves no legitimate purpose. KRS 508.130(1). As noted above, stalking of a family member or a member of an unmarried couple constitutes domestic violence and abuse. KRS 403.720(2).

Evidence was presented that Appellant secretly recorded video of Appellee having sex; that he threatened to contact Appellee's employer; that he sent to Appellee pictures of himself coming to her home at night; and, that he made social media posts reasonably calculated to threaten or intimidate Appellee. Appellee testified that these acts frightened, harassed, and intimidated her.

Appellant admitted to some of these acts and denied others. Taken in sum, though, the Jefferson Circuit Court found that they demonstrated by a

preponderance of the evidence that domestic violence and abuse has occurred and may again occur. Further, the circuit court did not improperly base the DVO on fear created by third parties as argued by Appellant, as Appellee's testimony taken alone was sufficient to support the DVO. The Jefferson Circuit Court's ruling did not constitute an abuse of discretion. *English*, *supra*. We find no error.

Appellant next briefly argues that the circuit court improperly relied on inadmissible hearsay and speculative opinion testimony. He again directs our attention to Mr. Waters' testimony, which he maintains violated Kentucky Rules of Evidence (KRE) 702 and KRE 805 because Mr. Waters did not directly counsel Appellant, but instead relied on Ms. Collins' notes and opinions in forming his conclusions. Appellant argues that the circuit court's reliance on Mr. Waters' hearsay testimony was therefore improper. In response, Appellee notes that Appellant did not object to Mr. Waters' testimony at the hearing and did not preserve this matter for appellate review.

At the beginning of his written argument, Appellant states in general terms that he preserved his objections to the trial court's entry of the DVO by "timely objections made throughout the testimony of the witnesses." He does not reveal, however, if he objected specifically to the introduction of Mr. Waters' testimony, nor where such objection may be found in the record.

When an appellant's brief fails to state where in the record an issue was preserved for appeal, we may (1) ignore the deficiency and proceed with the review; (2) strike the brief or its offending portions; or (3) review the issues raised in the brief for manifest justice only. *K.M.J. v. Cabinet for Health and Family Services*, 503 S.W.3d 193, 196 (Ky. App. 2016) (citation omitted).

We choose to examine Appellant's argument on this issue for manifest injustice, which requires a showing of the probability of a different result, or that the error in the proceeding was of such magnitude as to be "shocking or jurisprudentially intolerable." *Martin v. Commonwealth*, 207 S.W.3d 1, 4 (Ky. 2006).

In considering the testimony, the circuit court had full knowledge that Mr. Waters was offering his opinion testimony in a supervisory role, and had not directly counseled Appellant. The circuit court is vested with the authority to judge the weight and credibility of the evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Further, even if Mr. Waters' testimony was objected to and stricken as improper hearsay, Appellee's testimony alone formed a sufficient basis for the issuance of the DVO. We find no manifest injustice, and thus no basis for reversing the DVO on this issue.

Lastly, Appellant argues that the Jefferson Circuit Court erred in extending the DVO to the minor children in the absence of any evidence that

domestic violence was directed toward them. He notes that on the first page of the DVO, the circuit court filled in the names of the minor children, but did not check the box to indicate the children were persons protected by the order. Appellant contends that in the absence of any evidence of violence directed at the children, the circuit court erred in characterizing them as protected persons in the DVO.

Appellant correctly states that the boxes on the DVO next to the names of the children were not checked by the circuit court. However, the DVO lists their names and dates of birth under the heading "Persons Protected by this Order" and sub-heading "Other protected person(s) or protected minor(s)." Further, the court checked the box awarding temporary custody of the children to Appellee by operation of statute. Additionally, and as acknowledged by Appellant, the circuit court found that after Appellant began therapy with Dr. Purvis, his counsel could move to establish contact/parenting time with the children. It is clear from the DVO that the circuit court included the children as protected parties.

Appellant asserts that there is no evidence of violence directed at the children; therefore, the DVO should not have designated them as protected parties. The General Assembly has determined that both "family members" per KRS 403.720(2), as well as "members of an unmarried couple," each include children of that couple or children living in the household. *See* KRS 403.720(3) and (6); *Pennie v. Mohamed*, 720 S.W.3d 606, 614 (Ky. App. 2025). Further, KRS

403.725(1)(b) states that a petition for an order of protection may be filed by "an adult on behalf of a victim who is a minor or otherwise qualifying for relief under this subsection."  As such, irrespective of the parties' marital status, their minor children were properly before the court.

As to the sufficiency of the evidence as to the children, domestic violence and abuse includes the "infliction of fear of imminent physical injury, serious physical injury, . . . or assault between family members."  KRS 403.720(2)(a).  Evidence was introduced that Appellant engaged in violent outbursts in the home, where he paced around carrying a firearm and scattered ammunition throughout the home; that one child entered therapy because of the trauma; that Appellant acknowledged that his behavior was part of the child's trauma; and, Appellant's admission that the behavior was probably very scary for the child.  This evidence is sufficient to satisfy KRS 403.720(2)(a).

In a DVO proceeding, the circuit court may make reasonable inferences from the evidence, including the inference that the actor's behavior produced fear of physical injury in the victim.  *See Hohman v. Dery*, 371 S.W.3d 780, 783 (Ky. App. 2012) (stating that, "we conclude the evidence presented was sufficient for the court to reasonably infer that Joseph's conduct caused Jennifer to fear imminent physical injury; accordingly, the court's finding of domestic violence was not clearly erroneous").  The Jefferson Circuit Court reasonably

inferred from the evidence that Appellant's behavior constituted domestic violence per KRS 403.720(2)(a).  The court's ruling did not constitute an abuse of discretion.  *English*, *supra*.  We find no error.

## **CONCLUSION**

For these reasons, we affirm the Jefferson Circuit Court's domestic violence order.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Jason A. Bowman
Louisville, Kentucky

BRIEF FOR APPELLEE ABAGAIL VARNER:

Courtney Preston Kellner
Louisville, Kentucky