Thelma P. CANTRELL, Appellant,

v.

KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION, etc., and United Casket Company, Appellees.

Court of Appeals of Kentucky.

Feb. 6, 1970.

Shirley Small, Legal Aid Society, Louisville, for appellant.

Paul E. Tierney, James G. Childers, Dept. of Economic Security, Frankfort, for appellees.

PALMORE, Judge.

The appellant, Thelma Cantrell, while regularly employed by the United Casket Company as a seamstress, took time off from her work in order to nurse her sick husband. By the time she was able to return to her job it had become necessary for the employer to replace her. Being unable to find other employment, she filed a claim with the appellee Kentucky Unemployment Insurance Commission for unemployment compensation under the provisions of KRS Chapter 341. The claim was denied by the Commission on the ground that she had left her job "voluntarily without good cause," which is a disqualification prescribed by KRS 341.370(2) (c). She appeals from a judgment of the circuit court affirming the action of the Commission. KRS 341.450.

Mrs. Cantrell had worked for the casket company for six years. Her husband had a serious gastro-intestinal condition requiring surgery on September 5, 1967. That morning she advised Mr. Hicks, her employer's plant superintendent, of the circumstances and told him she would like to take "several weeks" off to care for her husband. Hicks granted permission, and thereafter he was contacted daily by either Mrs. Cantrell or one of her friends or relatives and thus was kept abreast of the developments hereinafter mentioned. Mrs. Cantrell's husband was operated on three more times, on September 11, 20 and 28, 1967. He died on October 21 and was buried on October 24, 1967. On October 26, 1967, Mrs. Cantrell reported to the employer that she was ready to return to work, but was advised that she had been replaced and there was no employment for her.

On September 5, when she first took time off, Mrs. Cantrell hoped to be able to resume work after a week or so. On September 11 she telephoned Mr. Hicks and told him she would come back as soon as she could but that she did not know how long it would be. On September 20 she called and asked Mr. Hicks for her two weeks' vacation pay, as she was in need of money. This request was granted. She talked to Mr. Hicks again on September 27 (the day before her husband's last operation) and told him her husband was at the point of death and she did not know when she would be able to return to work. At this time Mr. Hicks told Mrs. Cantrell the company might have to hire a replacement for her, but she did not understand this to mean that her own employment status would be terminated. As she testified, "If they had told me to come back to work or lose my job, I would have tried to have gotten back a day or two a week any way."

The Commission places much reliance on Unemployment Insurance Commission v. Cochran Foil Company, Ky., 331 S.W.2d 903 (1960), in which it was held that a claimant who had been temporarily laid off and, when called back, declined to resume her job because she had moved to Texas to join her husband had voluntarily quit without good cause.

We are of the opinion that this case is not to be equated with the Cochran Foil Company case. It is true that KRS 341.-350(7) enjoins a "strict construction" with respect to eligibility requirements and conditions of disqualification, and that Broadway and Fourth Avenue Realty Co. v. Allen, Ky., 365 S.W.2d 302, 303, 304 (1963), took this to mean that the strict construction runs both against eligibility and in favor of disqualification, but we do not believe the circumstances of this case require any fol de rol about strict or liberal construction in order to arrive at the correct

**237**

solution. When all else is said and done, common sense must not be a stranger in the house of the law. It would be positively inhuman to hold that this woman voluntarily quit her job without good cause—technically or otherwise. "Good cause usually is regarded as a reason sufficient in ordinary circumstances of an urgent and personal nature to justify leaving employment; and the employee's own health or the health of close members of his family would ordinarily constitute such a justification." In re Lauria's Claim, 18 A.D.2d 848, 236 N.Y.S.2d 168 (Sup.Ct.App.Div. 1963).

Since the cause of Mrs. Cantrell's leaving her work was not "attributable to the employment," KRS 341.530(3) shifts the ultimate burden of her unemployment compensation payments to the pooled account. Cf. Southern Bell T. & T. Co. v. Kentucky Unemployment Ins. Com'n, Ky., 437 S.W. 2d 775, 779 (1969).

The judgment is reversed with directions that the case be remanded to the Commission for further proceedings consistent with this opinion.

All concur.