KENTUCKY UNEMPLOYMENT INSURANCE COMMISSION and Kentucky Carbon Corporation, Movants,

v.

Bobby GOOSLIN, Respondent.

No. 87–SC–836–DG.

Supreme Court of Kentucky.

Sept. 8, 1988.

John H. Walker, Ryan M. Halloran, Cabinet for Human Resources, Frankfort, Russell H. Davis, Jr., William J. Baird, Pikeville, for movants.

William L. Huffman, Zaring P. Robertson, Pikeville, for respondent.

LEIBSON, Justice.

This case presents a question of first impression concerning appropriate statutory construction of the term "discharged for misconduct" as used in the Kentucky Unemployment Compensation Act. KRS 341.370 provides, in pertinent part:

> (1) A worker shall be disqualified from receiving benefits for the duration of any period of unemployment with respect to which:
>
> . . . .
>
> (b) He has been discharged for misconduct or dishonesty connected with his most recent work ..."

KRS 341.370(6) lists specific instances that constitute discharge for misconduct, but prefaces that list by stating that " '[d]ischarge for misconduct' as used in this section shall *include but not be limited* to" the reasons that follow. Emphasis added. One of the causes included in the statutory list is "unsatisfactory attendance if the worker cannot show good cause for absences."

In this case the employee was discharged for failing to notify his employer as to the reason or the extensiveness of an absence occasioned by illness, at least until sometime after he was discharged from his employment.

The Kentucky Unemployment Insurance Commission (KUIC) denied unemployment insurance benefits, adopting the referee's report as follows:

> "A worker disserves the employer's interests when he fails to notify the company of absences even if those absences are unavoidable. Here, the claimant was aware that he would have to be absent for a protracted period but failed to notify the employer other than a call on the initial day stating he may be absent a 'few' days. Such failure was in a clear disregard of the employer's interests and qualifies as misconduct as defined."

Thus, KUIC used as a basis for disqualification a "discharge for misconduct" not included in the list of reasons provided by KRS 341.370(6), utilizing the language of subsection (6) to the effect that "this section shall include but not be limited to" the reasons given.

On appeal, Pike Circuit Court set aside the award and remanded to the Commission with directions to issue benefits. The Court of Appeals affirmed. We have accepted discretionary review, and reverse.

The claimant, Bobby Gooslin, worked for Kentucky Carbon for over 13 years before his discharge. He worked his regular shift on July 20, 1985, and was scheduled to work next on July 22, 1985, on which date he telephoned Kentucky Carbon's office manager reporting that he felt sick and would "be off a few days," giving no details. Gooslin then went to a doctor complaining of nervousness, dizziness and chest pains. The doctor advised Gooslin to stay off work for 30 days and further suggested additional medical attention by another doctor.

Gooslin made no effort to notify Kentucky Carbon of these facts. On August 8, 1985, having heard nothing further from him, his employer sent him a certified letter to the effect it was assumed he had "quit." The letter further stated that if he disputed this fact, the employer was initiating the suspension and discharge procedure in the union contract, giving five days to respond. On August 17, 1985, the employer wrote Gooslin a second letter advising that the five days "to respond ... has expired."

Only on August 23, 1985, over a month after Gooslin's last contact with Kentucky Carbon, did Gooslin's daughter deliver a doctor's statement to the company, which at that late date declined to rescind the discharge.

When Gooslin was ready to return to work in October of 1985, he filed a union grievance. After the arbitrator dismissed the grievance as untimely, Gooslin pursued unemployment compensation, contending that his notice to Kentucky Carbon was sufficient and alternatively excusing his efforts because of an alleged nervous breakdown.

Gooslin argues that under KRS 341.370 "unsatisfactory attendance" is only a disqualification "if the worker cannot show good cause for absences." But this is only one of the illustrative circumstances in KRS 341.370(6) justifying a finding of disqualification on grounds of discharge for misconduct. The fundamental question is whether the *facts* found by the Board "are supported by substantial evidence" [*Kentucky Unemployment Ins. Com'n v. Springer*, Ky., 437 S.W.2d 501 (1969)], and, if so, whether the Commission "incorrectly applied the law to the facts" presented to it [*Kentucky Unemployment Ins. Com'n v. Stirrat*, Ky.App., 688 S.W.2d 750 (1985)]."

The *Stirrat* case presented a fact pattern somewhat similar to the present one. KUIC denied unemployment benefits where the claimant was incarcerated and unable to contact anyone outside of the county jail, and discharged because of his unexplained absence from work. The Court of Appeals held "there was substantial evidence to justify a finding that the appellee had engaged in misconduct connected with his most recent work justifying his dismissal and a denial of unemployment benefits." It reversed the holding in circuit court that the Commission "failed to correctly interpret the law." *Id.* at 753.

There are two cases from our Court that bear on the issue.

In *Brown Hotel Co. v. White*, Ky., 365 S.W.2d 306 (1963), the Commission awarded benefits "based on the theory that absence from work because of personal illness was involuntary," and we reversed holding as a matter of law that "excessive absenteeism, coupled with the failure to give notice thereof to the employer," constituted "misconduct" requiring disqualification. *Id.* at 307.

*Cantrell v. Kentucky Unemployment Ins. Com'n*, Ky., 450 S.W.2d 235 (1970) would appear on casual inspection to have reached the opposite result. We held, as a matter of law, that a woman who took time off from work to nurse her extremely sick husband until he died did not leave her job voluntarily without good cause and when she was replaced she was entitled to unemployment benefits. However, the key to understanding the *Cantrell* decision is that the employee took pains to notify her employer on a daily basis of the continuing difficulties that made her absence a reasonable necessity. We stated:

"When all else is said and done, common sense must not be a stranger in the house of the law.... 'Good cause usually is regarded as a reason sufficient in ordinary circumstances of an urgent and

personal nature to justify leaving employment; ....' *In re Lauria's Claim,* 18 A.D.2d 848, 236 N.Y.S.2d 168 (Sup.Ct. App.Div.1963)." 450 S.W.2d at 237.

In the present case the evidence was in dispute as to whether the employee was at all times during his absence so disabled that he was unable to work. The Court of Appeals made a factual determination that he was, but the record does not compel this conclusion.

Notwithstanding, the real issue here is not whether the employee was unable to work, but whether the Commission properly interpreted failure to notify the employer of illness as misconduct justifying disqualification. The Court of Appeals took the position that "the statute does not impose upon the worker a duty to inform the employer of the good cause, only that the worker have good cause." We disagree when the evidence is such that the KUIC could conclude the lack of notice was both extensive and unjustified.

The appellee relies upon *Shamrock Coal Co., Inc. v. Taylor,* Ky.App., 697 S.W.2d 952 (1985). The Court of Appeals held the employee's conduct in overturning his bulldozer, a negligent act, standing alone, did not constitute misconduct justifying denial of unemployment benefits. The distinction between *Shamrock* and this case is the distinction between conduct that is negligent or inadvertent, and conduct which is of the employee's own volition. Here the record before the Unemployment Commission was sufficient to support a finding of misconduct when Gooslin failed to notify the company of reasons for absence over a substantial period of time, even if absence was unavoidable.

The Commission concluded "the claimant was aware that he would have to be absent for a protracted period but failed to notify the employer" in the manner that the circumstances called for. Factually, there was substantial evidence to support this conclusion, and based on this finding the Commission correctly applied the law.

The decision of the Pike Circuit Court and of the Court of Appeals is reversed. The decision of the Kentucky Unemployment Insurance Commission is affirmed.

STEPHENS, C.J., and GANT, VANCE and WINTERSHEIMER, JJ., concur.

STEPHENSON, J., dissents by separate opinion in which LAMBERT, J., joins.

STEPHENSON, Justice, dissenting.

This employee was discharged under the provisions of the union contract. The fact that the illness was not deemed sufficient to maintain a grievance under the contract should not bring this case into the "discharge for misconduct" provision of the statute. I would affirm.

LAMBERT, J., joins in this dissent.