COMMONWEALTH of Kentucky, Appellant,

v.

Raycine LOVE, Appellee.

No. 2009–SC–000671–DG.

Supreme Court of Kentucky.

March 24, 2011.

Jack Conway, Attorney General of Kentucky, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Office of Criminal Appeals, Frankfort, KY, Counsel for Appellant.

Karen Shuff Maurer, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

## I. INTRODUCTION.

■ Kentucky Revised Statutes (KRS) 533.040(3) provides, in relevant part, that a sentence of probation "shall run concurrently with any federal ... prison ... term for another offense to which the defendant ... becomes subject during the period, unless the sentence of probation ... is revoked. The revocation shall take place ... within ninety ... days after the grounds for revocation come to the attention of the Department of Corrections...." We granted discretionary review in this case to determine whether KRS 533.040(3) means that probation revocation must be completed—or merely initiated—within that ninety-day window in order for a state court sentence to run consecutively to a federal sentence imposed upon a probationer during the term of the probationer's state court-imposed probation. Consistent with our earlier precedent, we hold that in these types of cases, the revocation must be completed

within the ninety-day window for the imposition of consecutive sentencing.

## II. FACTUAL AND PROCEDURAL HISTORY.

In August 2004, a Kentucky trial court sentenced Raycine Love to six and one-half years' imprisonment for drug-related offenses and probated that sentence for five years. While on probation, Love committed a federal felony offense; and, in August 2006, the federal court sentenced Love to thirty months' imprisonment. While Love was serving that sentence in federal custody in October 2006, Kentucky officials lodged a detainer against Love with the federal correctional officials based upon Love's state probation violation. But Love's probation was not actually revoked by the state trial court until June 2008. Over Love's objection, the state trial court revoked Love's probation and ordered his Kentucky sentence to be served consecutively to his federal sentence. A divided panel of the Court of Appeals reversed the revocation order, holding that Love's probation was not timely revoked under KRS 533.040(3). The Court of Appeals reasoned that Love's sentence on revocation had to be served concurrently with his federal sentence.

We granted discretionary review in order to examine whether the mere initiation of revocation proceedings during the statutorily mandated ninety-day window is sufficient for imposition of consecutive sentencing—as the trial court ruled—or whether the Kentucky revocation proceedings must be fully completed within the statutory ninety-day window for consecutive sentencing to be permissible—as the Court of Appeals held. We hold that the plain language of KRS 533.040(3) requires revocation proceedings to be completed within the ninety-day time limit—not merely initiated—before a revoked Kentucky sentence may be ordered to be served consecutively with a federal sentence. Since the Court of Appeals came to a similar conclusion, we affirm.

## III. ANALYSIS.

■■ As an initial matter, we note that the facts and procedural history of this case are each largely uncontested. Our task, therefore, is properly to interpret the relevant statutes. Because statutory interpretation is a question of law, our review is de novo; and the conclusions reached by the lower courts are entitled to no deference.[1] And we must also interpret statutes in accordance with their plain meanings,[2] generally construing non-technical words according to their common meanings.[3]

The plain language of KRS 533.040(3) does not support the Commonwealth's contention that merely initiating revocation proceedings is a sufficient basis for consecutive sentencing under these facts. As pertinent to this case, that statutory subsection provides that Love's Kentucky probation would run concurrently with his federal sentence unless his Kentucky pro-

---

1. *See, e.g., Commonwealth v. McBride*, 281 S.W.3d 799, 803 (Ky.2009) ("The construction and application of statutes is a matter of law. Therefore, this Court reviews statutes [de novo] without deference to the interpretations adopted by lower courts.").

2. *Id.* ("A basic rule in statutory interpretation is that the 'plain meaning' of the statute controls.").

3. KRS 446.080(4) ("All words and phrases shall be construed according to the common and approved usage of language, but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed according to such meaning.").

bation was timely revoked. So the only way Love's Kentucky sentence could be ordered to run consecutively to his federal sentence would be if the Kentucky sentence was timely revoked, *i.e.*, within ninety days after the Department of Corrections learned of the grounds for revocation.

It is beyond dispute that the mere lodging of the detainer with the federal authorities was insufficient to revoke Love's probation.[4] To be precise, the lodging of the detainer was the first step in the revocation process.[5] The Commonwealth errs when it contends that its mere lodging of a detainer satisfied the statutory requirement in KRS 533.040(3) that the "revocation shall take place . . . within ninety days after the grounds for revocation [came] to the attention of the Department of Corrections. . . ." For the Commonwealth's position to be correct, we would have to graft language onto the statute so that it would provide that *"initiation of the revocation proceedings* shall take place .·. . within ninety days. . . ." And we may not add language to a statute.[6] So the plain language of KRS 533.040(3) compels a conclusion that in these types of cases, the revocation process must be completed within the ninety-day window for consecutive sentencing to be authorized.

In short, because the revocation did not take place within ninety days after the Department of Corrections received notice of the grounds for revocation of Love's Kentucky sentence, the trial court lacked the authority to order Love's Kentucky sentence on revocation to run consecutively to his federal sentence.

Our conclusion in this case simply reaffirms our decision in *Gavel v. Commonwealth,*[7] a case directly on point. In *Gavel,* the state court probated a defendant's sentence; and a federal court later convicted the defendant of a federal offense, at which point the state court revoked the defendant's probation and ordered the state sentence to be served consecutively to the federal sentence, believing that consecutive sentencing was mandated by KRS 533.060(2).[8] KRS 533.060(2) provided that when a defendant "has been convicted of a felony and is committed to a correctional facility . . . and . . . has been released by the court on probation, . . . and is convicted . . . [of] a felony committed while on . . . probation, . . . the period of confinement for that felony shall not run concurrently with any other sentence."[9]

4. At oral argument, Love disputed whether the Commonwealth filed its detainer within ninety days of learning of the grounds for revocation. The precise date upon which the Department of Corrections learned of the grounds for revocation of Love's probation is irrelevant for purposes of this appeal, however. The Commonwealth had knowledge of the cause for revocation by at least the date the detainer was lodged against Love; yet, Love's probation was not revoked until approximately twenty-months later. So KRS 533.040(3)'s ninety-day window for revocation was not met regardless of the precise date upon which the Commonwealth learned of the cause for revocation of Love's probation.

5. *See, e.g.,* KRS 533.050(2) ("The court may not revoke or modify the conditions of a sentence of probation or conditional discharge except after a hearing with defendant represented by counsel and following a written notice of the grounds for revocation or modification.").

6. *See, e.g., Commonwealth v. Chestnut,* 250 S.W.3d 655, 661 (Ky.2008) ("We must interpret statutes as written, without adding any language to the statute. . . .").

7. 674 S.W.2d 953 (Ky.1984).

8. *Id.* at 953.

9. *Id.* at 953–54. Although KRS 533.060(2) has been amended since we decided *Gavel,* those amendments have been minor. *See* KRS 533.060(2) (current version) ("When a

We held that KRS 533.060 was inapplicable because "[t]he conviction [that felony] referred to in that section is the subsequent one, not the first. . . . In the present case, *'that'* felony would be the federal conviction, which the state court has no control over." [10] In other words, KRS 533.060 does not apply when a Kentucky defendant's probation is revoked because of a later federal offense because a Kentucky court cannot require a federal court to run a later federal sentence consecutively to an existing Kentucky sentence. Instead, in those situations, like the case at hand, the applicable statute is KRS 533.040(3), which specifically applies to federal offenses to which a Kentucky probationer becomes subject during the probationary period.[11]

Although our opinion in *Gavel* is terse, it does establish two points relevant to the present case. First, we made clear in *Gavel* that KRS 533.060(2)'s consecutive sentencing provision for offenses committed while on probation is inapplicable when a person on state probation incurs a federal sentence during the state probationary period. The Court of Appeals dissent in this case and the Commonwealth take issue with *Gavel*'s holding. The Commonwealth contends that *Gavel*, although "technically correct[,]" nevertheless, "undermines the intention of the legislature in enacting KRS 533.060. . . ." But the Commonwealth's argument that *Gavel* thwarts the General Assembly's intent to deal harshly with those whose probation is revoked is undermined by the fact that the General Assembly has not seen fit to make substantive changes to either KRS 533.040(3) or to KRS 533.060 since we rendered *Gavel* So we presume that the General Assembly agrees with our decision in *Gavel.*[12] Likewise, we remain convinced that *Gavel* is a correct construction of the relevant law for cases like the one at hand.

Second, we established in *Gavel* that KRS 533.040(3)'s provision whereby a state court can order a sentence to be served consecutively to a federal sentence upon revocation of state court probation only applies if "the order of probation revoked was within 90 days after the grounds for revocation came to the atten-

person has been convicted of a felony and is committed to a correctional detention facility and released on parole or has been released by the court on probation, shock probation, or conditional discharge, and is convicted or enters a plea of guilty to a felony committed while on parole, probation, shock probation, or conditional discharge, the person shall not be eligible for probation, shock probation, or conditional discharge and the period of confinement for that felony shall not run concurrently with any other sentence.").

10. 674 S.W.2d at 954.

11. When a Kentucky state court probationer incurs a new Kentucky state court felony sentence while on probation, parole, shock probation or conditional discharge from a Kentucky state court, the ninety-day window of KRS 533.040(3) does not apply. Instead, in those situations, KRS 533.060, which mandates consecutive sentencing for felonies committed while on probation, applies. *See Brew-*

*er v. Commonwealth,* 922 S.W.2d 380 (Ky. 1996). As we specifically noted in *Brewer,* however, *Gavel* controls in revocation proceedings when a state probationer incurs a federal sentence while on Kentucky state probation. *Id.* at 382. Since the General Assembly has not seen fit to materially change the relevant portions of KRS 533.040 or KRS 533.060 and since KRS 533.040(3) specifically applies to revocation based upon incurrence of a subsequent federal sentence, we reiterate that our holding in *Gavel* applies to situations like the one at hand involving the proper interplay between state and federal sentences.

12. *Rye v. Weasel,* 934 S.W.2d 257, 262 (Ky. 1996) ("There is a strong implication that the legislature agrees with a prior court interpretation of its statute when it does not amend the statute interpreted.").

tion of the Bureau of Corrections...."[13] As stated previously, this holding comports with the plain language of KRS 533.040(3), which requires the revocation process to be completed within the aforementioned ninety-day window.

Because the order revoking Love's probation in the case at hand was not issued within ninety days after the Department of Corrections learned of the possible grounds for revocation of Love's probation, the trial court was without statutory authority to order Love's Kentucky sentence to be served consecutively to his federal sentence.[14]

We are not holding that the revocation in these types of cases must occur within the ninety-day window or be forever barred. A probated sentence may be revoked "at any time prior to the expiration or termination of the period of probation."[15] Instead, the only question properly before us is whether an otherwise properly revoked sentence may be ordered to be served consecutively to a federal sentence if the revocation occurs more than ninety-days after the cause for revocation comes to the attention of the relevant officials for the Commonwealth. The ninety-day clock in KRS 533.040(3) for application of consecutive sentencing in these Kentucky state/federal offense cases begins to run when the cause for revocation comes to the attention of the Department of Corrections. In the case at hand, since the Commonwealth had notice of grounds for revocation no later than the date the detainer was lodged against Love, the ninety-day clock began running no later

than the time at which the detainer was lodged (by which point Love's federal conviction and sentencing had both occurred). Since the revocation occurred much more than ninety days after the detainer was lodged, Love's sentence on revocation could not be ordered to be served consecutively to his federal sentence.

We also take this opportunity to clear up any confusion caused by imprecise language in our opinion in *Sutherland.* In that case, we held that the General Assembly's intent in enacting KRS 533.040(3) appeared to be "to require the Department of Corrections to push for revocation proceedings in a speedy manner, if any subsequent term of sentence is to be served consecutive to any time spent in incarceration as a result of a revocation of probation."[16]

At first blush, our regrettable use of the phrase "push for revocation proceedings in a speedy manner" seems only to require the Department of Corrections to initiate the revocation process in a timely manner for consecutive sentencing to be permissible under KRS 533.040(3). In fact, the Commonwealth relies upon that construction of the phrase to support its arguments. Although our language was imprecise, we did not intend in *Sutherland* to overrule *Gavel* or otherwise to hold that the mere timely initiation of revocation proceedings was sufficient to satisfy the ninety-day deadline of KRS 533.040(3). Instead, we only meant that the Department of Corrections must take whatever actions are necessary and within its powers to complete revocation proceedings

13. 674 S.W.2d at 954.

14. *Accord Sutherland v. Commonwealth,* 910 S.W.2d 235, 237 (Ky.1995) ("Nonetheless, it is the Legislature which provided the 90–day time limitation within KRS 533.040(3). The statute provides that any revocation of probation (which occurs outside of the 90–day period) is to be run concurrently with any other offense.").

15. KRS 533.020(1).

16. 910 S.W.2d at 237.

within the ninety-day window for consecutive sentencing to be permissible in cases governed by KRS 533.040(3).

We understand fully the Commonwealth's argument that it is a practical impossibility to achieve probation revocation of an individual held in federal custody within ninety days. Although the Commonwealth's argument is not buttressed by supporting materials found in the record of this case, common sense and our experience cause us to accept the premise that it is exceedingly difficult to revoke the Kentucky-state-court-imposed probation of someone in the custody of the federal correctional authorities within the narrow ninety-day window contained in KRS 533.040(3). But the wisdom or expediency of the restrictive ninety-day window is a public policy choice made by the General Assembly.[17] We may only interpret KRS 533.040(3), but we may not re-write it. As we have stated before, if KRS 533.040(3)'s ninety-day "time frame is deemed to be too short, it is up to the General Assembly to make a change." [18]

## IV.  CONCLUSION.

For the foregoing reasons, the decision of the Court of Appeals is affirmed; and this matter is remanded to the trial court for further proceedings consistent with this opinion.

All sitting.  ABRAMSON, NOBLE, SCHRODER, and VENTERS, JJ., concur. SCOTT, J., dissents by separate opinion in which CUNNINGHAM, J., joins.

SCOTT, J., dissenting:

I respectfully dissent from the majority's decision—holding that KRS 533.040(3) requires the completion of probation revocation proceedings within ninety days—because it effectively eliminates the Commonwealth's ability to revoke the probation of a federally incarcerated probationer.  And this absurd result belies any legislative intent to mandate a complete revocation within the ninety-day period.  See Hall v. Hospitality Resources, Inc., 276 S.W.3d 775, 785 (Ky.2008) (stating that "[w]e have often said that statutes will not be given [such a] reading where to do so would lead to an absurd or unreasonable conclusion.") (internal citations omitted).

The majority implicitly concedes this point, acknowledging that common sense guides them to accept the premise that it is now "exceedingly difficult to revoke the Kentucky-state-court-imposed probation of someone in custody of the federal correctional authorities within the narrow ninety-day window contained in KRS 533.040(3)." Op. at 97.  Consequently, probationers who have the serendipitous fortune of feloniously violating federal law will rarely serve their state-court sentence consecutively.

When undertaking statutory interpretation, we must "refrain from interpreting a statute so as to produce an absurd or unreasonable result." Wilburn v. Commonwealth, 312 S.W.3d 321, 328 (Ky.2010). However, the majority's statutory interpretation admittedly implements a framework so restrictive it has no practical application, i.e., an "absurd or unreasonable result." Id.

Under such interpretation, if the Commonwealth seeks to revoke state-court-or-

---

17.  Cf. Board of Trustees, Newport Public Library v. City of Newport, 300 Ky. 125, 187 S.W.2d 806, 812 (1945) ("But we have no power to question the propriety, wisdom, or expediency of legislation.  Any unjust provision of the act can be remedied only by the General Assembly.").

18.  Sutherland, 910 S.W.2d at 237.

dered probation and reinstate the state sentence to run consecutively to the federal sentence, it must complete a myriad of proceedings within the "narrow ninety-day window." Op. at 97. The Commonwealth must notify the probationer, secure permission from the United States Department of Justice (DOJ), arrange transportation to and from the revocation hearing, participate in a statutorily-mandated hearing, and await a decision. Not only is this temporally impracticable, but it also presumes cooperation from the DOJ. Despite the Commonwealth's best compliance efforts, the DOJ possesses absolute authority to deny the temporary release of its prisoner for revocation proceedings, thereby eliminating the Commonwealth's ability to revoke probation. This is surely not what the Legislature intended when it penned KRS 533.040(3).

Careful examination of KRS 533.040's Official Commentary belies the restrictive framework consequent from the majority's statutory interpretation. The Official Commentary states that subsection three is a notice provision, designed to prevent unfair surprises, which impede the rehabilitative function of incarceration. This subsection was designed to prevent the authorities from "wait[ing] until the defendant has served his prison sentence for the subsequent offense and then seek revocation of his prior sentence of probation or conditional discharge and reinstate his prior sentence of imprisonment." The Official Commentary continues, stating that the purpose KRS 533.040(3) is to "prohibit such a practice unless the authorities act to revoke the prior sentence of probation or conditional discharge before the defendant has completed his imprisonment under the subsequent sentence." (emphasis added).

As evinced by the Official Commentary, the legislative intent was to require notice of probation revocation prior to the prisoner completing the unrelated federal sentence. In this case, the probationer, Raycine Love, was served with a detainer action letter for his "probation violation," notifying him that the Commonwealth was attempting to revoke his probation. Thus, here "the authorities act[ed] to revoke ... before the defendant completed his imprisonment under the subsequent sentence." Commentary to KRS 533.040 (emphasis added). As a result, Love could not reasonably expect his unrestricted freedom upon completion of his federal sentence.

With the current state of our prison system and the widespread effort to reduce that population by increasingly utilizing probation, it is integral that our prosecutors retain revocation ability when probationers subsequently violate federal law. Despite this, the majority now imposes a framework so procedurally restrictive that revocation, in this context, is now "exceedingly difficult." Op. at 97. As we have keenly stated in the past, "[w]hen all else is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Commission*, 450 S.W.2d 235, 237 (Ky.1970). The majority's opinion ignores this conventional wisdom; thus, I respectfully dissent.

CUNNINGHAM, J., joins.