RENDERED:  JUNE 4, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0373-MR

CHASITY SHIRLEY                                               APPELLANT

           APPEAL FROM PULASKI CIRCUIT COURT
v.            HONORABLE DANIEL J. VENTERS, SPECIAL JUDGE
                      ACTION NO. 19-CR-00071

COMMONWEALTH OF KENTUCKY                          APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON AND L. THOMPSON, JUDGES.

THOMPSON, K., JUDGE:  Chasity Shirley appeals from the judgment and sentence of the Pulaski Circuit Court following a jury trial in which she was convicted of the offense of unlawful access to a computer in the first degree, a Class C felony, for a shoplifting offense involving use of a self-checkout register

and scanner. We reverse and remand because we agree with Shirley that she had Walmart's consent to use the self-checkout register and scanner.

On October 5, 2018, Shirley went shopping with her mother and daughter at a Walmart store in Somerset, Kentucky. Walmart loss prevention employees observed Shirley on security cameras as she shopped. After walking around the store and picking up a few items, Shirley proceeded to the self-checkout register. One Walmart employee, Wendy Douglas, would later testify that she observed Shirley pretending to scan a rug and a slip cover for a couch. Instead of scanning the correct barcodes, Douglas would allege that Shirley instead scanned the barcode from a toothbrush. Douglas noted that the items she observed on the camera did not match the items scanned by the computer. The difference in price between the rug and slip cover purportedly purchased and the toothbrush was $80.80.

As Shirley attempted to leave the store, Douglas requested that Shirley talk to Douglas about her purchases. Shirley agreed and she, along with her mother and child, went to an office area with Douglas. Shirley and her mother produced their drivers' licenses for Douglas, who looked on a computer database to see if either had shoplifted from Walmart in the past. Shirley's mother and child left the store a short time later because the child was getting restless.

Shirley grew agitated and argumentative with Douglas. Eventually, Shirley allegedly pushed past Douglas toward the exit. Douglas would claim that Shirley elbowed her into a door while fleeing. Shirley then left the store. Douglas acknowledged she had no lawful authority to detain Shirley.

Thereafter, Shirley was indicted on one count each of unlawful access to a computer in the first degree pursuant to Kentucky Revised Statutes (KRS) 434.845 and robbery in the second degree pursuant to KRS 515.030. Prior to trial, the robbery count was amended to assault in the fourth degree pursuant to KRS 508.030.

Following a jury trial, Shirley was found guilty on the charge of unlawful access to a computer in the first degree and not guilty on the assault charge. Shirley waived jury sentencing in exchange for the Commonwealth's recommended sentence of five years in prison. Shirley ultimately received a probated sentence and was placed on conditional discharge for thirty days.

Shirley argues that the trial court erred in denying her pre- and post-trial motions for a directed verdict of acquittal on the charge of unlawful access to a computer in the first degree. She maintains the record conclusively demonstrates that Walmart consented to her use of the self-checkout register and scanning machine; therefore, an essential element of the offense—the owner's lack of consent to access the computer—cannot be proven.

In *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991), the

Kentucky Supreme Court restated the rule for a directed verdict as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony.

"To defeat a directed verdict motion, the Commonwealth must only produce 'more

than a mere scintilla of evidence.'" *Lackey v. Commonwealth*, 468 S.W.3d 348,

352 (Ky. 2015) (quoting *Benham*, 816 S.W.2d at 187). On appellate review, the

test for determining if a directed verdict of acquittal was required is whether

"under the evidence as a whole, it would be clearly unreasonable for a jury to find

guilt[.]" *Benham*, 816 S.W.2d at 187.

Whether essentially undisputed facts are sufficient to withstand a

directed verdict depends on the proper legal interpretation to be given to the

controlling statute. *Commonwealth v. Montaque*, 23 S.W.3d 629, 631 (Ky. 2000).

> The interpretation of a statute is a matter of law. A reviewing court is not required to adopt the decisions of the trial court as to a matter of law, but must interpret the statute according to the plain meaning of the act and in accordance with the legislative intent. When reviewing a question of law rather than a question of fact, the reviewing court has a greater latitude to determine

whether the findings of the trial court were supported by evidence of probative value.

*Floyd County Bd. of Educ. v. Ratliff*, 955 S.W.2d 921, 925 (Ky. 1997).

Therefore, we examine KRS 434.845 and the related statutes. KRS 434.845 provides as follows:

> (1) A person is guilty of unlawful access to a computer in the first degree when he or she, *without the effective consent of the owner*, knowingly and willfully, directly or indirectly accesses, causes to be accessed, or attempts to access any computer software, computer program, data, computer, computer system, computer network, or any part thereof, for the purpose of:
>
> > (a) Devising or executing any scheme or artifice to defraud; or
> >
> > (b) Obtaining money, property, or services for themselves or another by means of false or fraudulent pretenses, representations, or promises.
>
> (2) Unlawful access to a computer in the first degree is a Class C felony.

(Emphasis added.)

The lesser degrees of this crime all begin with the same statutory language as that contained in KRS 434.845(1). *See* KRS 434.845(1), KRS 434.850(1), KRS 434.851(1), and KRS 434.853(1). Second, third, and fourth degree unlawful access specifically link the amount of "loss or damage" incurred to the penalty, with KRS 434.850 penalizing a loss or damage of $300 or more as a

Class D felony, KRS 434.851 penalizing a loss or damage of less than $300 as a

Class A misdemeanor, and KRS 434.853 penalizing such an act with no loss or

damage as a Class B misdemeanor.  The definition of "[l]oss or damage" includes

"theft."  KRS 434.840(12).

KRS 434.840(9) defines "[e]ffective consent" as follows:

"Effective consent" means consent by a person legally
authorized to act for the owner. Consent is not effective if
it is:

(a) Induced by deception or coercion;

(b) Given by a person who the actor knows is not legally
authorized to act for the owner;

(c) Given by a person who by reason of age, mental
disease or defect, or intoxication is known by the
actor to be unable to make responsible property or
data dispositions; or

(d) *Used for a purpose other than that for which the
consent is given*[.]

(Emphasis added.)

The language used in each degree of the crime of unlawful access to a

computer is written in a very vague, expansive, and overbroad manner when all the

definitions contained in KRS 434.840 are incorporated into these statutes.[1]  For

example, the definition of "[a]ccess" includes "approach."  KRS 434.840(1).  We

---

[1] KRS 434.840 contains detailed definitions for the terms access, computer, computer network, computer program, computer software, computer system, data, device, effective consent, financial instruments, intellectual property, loss or damage, owner, property, and services.

must act judiciously in interpreting such language to avoid further broadening the reach of KRS 434.845 in an inappropriate manner.[2]

Shirley argues that Walmart invites the public, as licensees, into its stores to purchase the products it sells and then provides self-checkout machines with attached scanners for the public to use in making purchases. She argues that Walmart clearly gave her "effective consent" to use the scanner and its employees did not revoke that consent even as they watched her use it under suspicion of attempted theft. Shirley maintains she used the scanning machine in precisely the way or purpose Walmart intended, to scan bar codes.

The Commonwealth argues that Walmart's consent only extended to Shirley using the scanner for the limited purpose of completing a lawful business transaction. Under its reasoning, when her actions exceeded the scope of that consent by using the scanner to commit a theft, the consent was no longer "effective" as defined by KRS 434.840(9)(d).

The Commonwealth interprets the definition of "effective consent" too broadly. There is nothing in the statutory definition which causes revocation of Walmart's consent under these facts.

---

[2] We note that KRS 434.845(1) is extremely problematic when applied to theft as it is difficult to conceive of any theft-type offense that would not fit within either of the purposes required for unlawful access to a computer in the first degree: "(a) [d]evising or executing any scheme or artifice to defraud; or (b) [o]btaining money, property, or services for themselves or another by means of false or fraudulent pretenses, representations, or promises." Therefore, KRS 434.845 effectively subsumes the lesser theft-type offenses into this Class C felony.

Walmart and its employees authorize its customers to use its self-checkout registers so long as they are open. Customers use the self-checkout register to scan an item, allowing its identification by barcode and for it to be "rung up" for purchase, and then submit payment for the item and receive a receipt thereby authorizing the customer to depart with the item.

Shirley retained the effective consent of Walmart when she used the self-checkout register for its intended purpose, to buy items. Shirley's actions comported exactly with this intended purpose where she scanned a toothbrush barcode and paid for this item, thereby making a lawful purchase. The self-checkout register worked properly and exactly as it was intended within the scope of the effective consent extended to Shirley and all customers.

This theft was not dependent on the scanner and, indeed, the scanner was not used to commit the theft at all. Instead, the theft occurred in Shirley trying to use a lawful purchase, payment, and issuance of a receipt for the toothbrush to conceal the theft of the rug and slip cover. The self-checkout register was irrelevant to the act other than how Shirley used it to provide "cover" for the act to evade discovery where one clerk is typically monitoring activity on multiple self-checkout registers.

Before bar codes, a similar act would be switching price stickers on items and then having a store clerk "ring" them up. While such an act might be

less likely to succeed when there is a human clerk performing the sale, the theft taking place through paying the price for one item while obtaining another is entirely external from the computer system.

We are convinced that in amending this law in 2002, our General Assembly could not have conceived of the way that the Commonwealth would seek to apply it to these facts. As noted by the United States Supreme Court more than ten years ago, we are experiencing "[r]apid changes in technology[.]" *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 364, 130 S. Ct. 876, 912, 175 L. Ed. 2d 753 (2010). "[T]echnology nearly inconceivable just a few decades ago" is now reality. *Riley v. California*, 573 U.S. 373, 385, 134 S. Ct. 2473, 2484, 189 L. Ed. 2d 430 (2014). One example of this rapid technological development is the advent of "smart" cell phones, which are essentially "minicomputers[.]" *Id.* at 393-94, 134 S. Ct. at 2489. They are the sort of technology "unheard of ten years ago[.]" *Id.* at 385, 134 S. Ct. at 2484.

Our world has changed drastically even from when *Citizens United* and *Riley* were written. Now many more devices in the world would fit under the statutory language of "computer software, computer program, data, computer, computer system, computer network, or any part thereof[.]" KRS 434.845(1). Even "smart lights" which can be remotely accessed might fit within the reach of these terms based on being part of a computer network by being connected to a

smart phone via the internet.  *See* Alex Colon & Angela Moscaritolo, *The Best Smart Home Devices for 2021*, PCMAG (2020), https://www.pcmag.com/news/the-best-smart-home-devices (last visited Mar. 11, 2021) (explaining that in smart homes all the devices in people's lives, such as clocks, lights, window blinds, appliances, and cooking utensils can connect to the internet so as to "communicate, send you information, and take your commands").

A whole store may be part of a computer system where it can now operate to "ring" up purchases without cashiers.  *See* Catherine Thorbecke, *Amazon Opens a Grocery Store with No Cashiers*, ABC NEWS (Feb. 25, 2020, 11:04 AM), https://abcnews.go.com/Business/amazon-opens-grocery-store-cashiers/story?id=69199966 (last visited Mar. 11, 2021) (explaining that customers select items and are charged when they walk out of the store, with this shopping working through similar technology to that used for self-driving cars).  Any attempt to shoplift from such a store would then merit conviction under KRS 434.845 under the Commonwealth's reasoning.

Additionally, the varied degrees of unlawful access to a computer should be interpreted in a manner that is consistent with our other criminal statutes. There would be an inherent unfairness in convicting Shirley of a Class C felony for what should be a simple misdemeanor for the theft of goods worth $80.80. Nowhere else in our criminal laws would such a theft be treated as a felony, much

less a Class C felony and, indeed, reforms have taken place to make crimes that are part of the Kentucky Penal Code consistently require a $500 threshold be met before a crime becomes a felony.[3] Similar crimes that are not part of the Kentucky Penal Code also typically make use of a $500 threshold to separate felonies from misdemeanors.[4]

Possibly appropriate charges for Shirley's actions could have been theft by deception, KRS 514.040(1)(a), or theft by unlawful taking, KRS 514.030(1)(a). Certainly, Shirley was obtaining "property . . . of another by deception with intent to deprive the person thereof" and intentionally deceiving by "[c]reat[ing] or reinforc[ing] a false impression" as to "value" by appearing to pay for the items she stole. KRS 514.040(1)(a). Alternatively, she was "[t]ak[ing] or exercis[ing] control over movable property of another with intent to deprive him thereof[.]" KRS 514.030(1)(a). The "fit" with these crimes is easy to establish.

---

[3] *See* KRS 514.040(8) (theft by deception); KRS 514.030(2) (theft by unlawful taking or disposition); KRS 514.050(2) (theft of property lost, mislaid, or delivered by mistake); KRS 514.060(4) (theft of services); KRS 514.070(4) (theft by failure to make required disposition of property received); KRS 514.080(3) (theft by extortion); KRS 514.090(3) (theft of labor already rendered); 2009 Ky. Laws ch. 106 (HB 369) (eff. Jun. 25, 2009) (amending KRS 434.650, 434.670, and KRS 434.690 to change the threshold for a felony offense from $100 to $500 and amending KRS 434.655, KRS 514.030, KRS 514.040, KRS 514.050, KRS 514.060, KRS 514.070, KRS 514.080, KRS 514.090, KRS 514.110, and KRS 514.120 to change the threshold for a felony offense from $300 to $500).

[4] *See* KRS 434.650(1) ($500 threshold for fraudulent use of credit or debit card); KRS 434.670 ($500 threshold for failure to furnish goods, services, etc., represented in writing as furnished). *But see* KRS 434.851 ($300 threshold for unlawful access); KRS 209.990(5)-(7) ($300 threshold for exploiting a disabled adult victim); KRS 194A.990(1) ($100 threshold for illegally receiving benefits from a governmental assistance program).

Considering the value of the property taken, either charge would constitute a Class A misdemeanor because the property taken was valued at less than $500. KRS 514.040(8); KRS 514.030(2).

"When all else is said and done, common sense must not be a stranger in the house of the law." *Cantrell v. Kentucky Unemployment Ins. Comm'n*, 450 S.W.2d 235, 237 (Ky. 1970). As Shirley's use of the self-checkout register to lawfully purchase an item never exceeded the scope of Walmart's consent, and the use of the scanner was only peripherally related to the theft, a directed verdict should have been granted in Shirley's favor, and reversal of her conviction and sentence is required as a matter of law.

Accordingly, we reverse and remand the Pulaski Circuit Court's judgment and sentence.

CLAYTON, CHIEF JUDGE, CONCURS.

THOMPSON, L., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, L., JUDGE, DISSENTING: I respectfully dissent from the majority opinion. A person is guilty of unlawful access to a computer in the first degree when she accesses a computer without the consent of the owner for the purpose of obtaining property by false means. KRS 434.845. The Walmart scanner at issue is a computer as defined by KRS 434.840(2), and Shirley admitted using it to obtain property by false means. She did not have Walmart's consent to

use the scanner for an unlawful purpose. Consent is "effective" in the context of KRS Chapter 434 only when it is exercised for the purpose for which it was given. KRS 434.840(9)(d). Walmart consented to Shirley's use of its scanner for the limited purpose of completing a lawful business transaction. When Shirley's usage of the scanner exceeded the scope of Walmart's consent, the consent was no longer effective. The Commonwealth proved each element of the offense.

The record amply supports the jury's verdict that Shirley violated KRS 434.845. As such, Shirley was not entitled to a directed verdict, and the Pulaski Circuit Court properly so found. I would affirm the decision of the Pulaski Circuit Court.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky