RENDERED: APRIL 28, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0300-DG

LAWRENCE RICHARDSON                                        APPELLANT

V.                  ON REVIEW FROM COURT OF APPEALS
NOS. 2018-CA-1418 AND 2018-CA-1455
NICHOLAS CIRCUIT COURT NO. 16-CR-00070

COMMONWEALTH OF KENTUCKY                        APPELLEE

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING IN PART, REVERSING IN PART, AND REMANDING</u>**

Lawrence Richardson entered an *Alford*[1] plea to two counts of criminal attempt to commit first-degree unlawful transaction with a minor and one count of third-degree terroristic threatening after his grandson reported various instances of Richardson's sexual misconduct. Pursuant to the plea agreement, the Commonwealth recommended a ten-year prison sentence, which the trial court imposed. The trial court also ordered Richardson to complete the Sex Offender Treatment Program (SOTP) but determined that Richardson was not subject to post-incarceration supervision pursuant to Kentucky Revised Statute (KRS) 532.043.

On appeal, the Court of Appeals upheld the SOTP requirement but concluded that the trial court wrongly determined that Richardson was not

---

[1] *Alford v. North Carolina*, 400 U.S. 25 (1970).

subject to post-incarceration supervision. Richardson petitioned this Court for discretionary review. After careful review of the record, we affirm in part, reverse in part, and remand this case to the trial court.

## FACTS AND PROCEDURAL HISTORY

In August 2016, twelve-year-old G.R. disclosed to his mother that his maternal grandfather, Larry Richardson, had sexually abused him while he was between the ages of seven and eleven. G.R. stated that on at least six occasions when he was in the bathroom at his grandparents' house, Richardson entered the bathroom and fondled his genitals. His mother called the police and G.R. reported these allegations. During his interview with the Child Advocacy Center, G.R. also disclosed that Richardson had inserted his penis into G.R.'s anus. When the police informed Richardson of G.R.'s allegations, Richardson threatened to kill himself. He also made threats against G.R.'s mother.

Richardson was charged with first-degree sodomy (victim under 12); incest (victim under 12); six counts of first-degree sexual abuse (victim under 12); and third-degree terroristic threatening. After a January 2017 competency evaluation at the Kentucky Correctional Psychiatric Center (KCPC), the trial court determined that Richardson was competent to stand trial.[2] Richardson was evaluated by his own expert in January 2018 and again evaluated by

---

[2] This competency hearing is not part of the record on appeal. When a portion of the record is not before the appellate court, a presumption arises that the missing record supports the decision of the trial court. *Moody v. Commonwealth,* 170 S.W.3d 393, 398 (Ky. 2005).

KCPC in March 2018 and the trial court reaffirmed its finding that Richardson was competent.

Thereafter, Richardson and the Commonwealth reached a plea agreement. Under the terms of the agreement, Richardson would enter an *Alford* plea to two counts of attempted first-degree unlawful transaction with a minor and one count of third-degree terroristic threatening. In exchange for his plea, the Commonwealth would dismiss the remaining charges and recommend a ten-year prison sentence. Richardson and the Commonwealth agreed that the trial court would determine: (1) whether Richardson was subject to post-incarceration supervision upon his release; and (2) whether Richardson was required to complete the SOTP while incarcerated. Richardson and the Commonwealth further agreed that the trial court's rulings on SOTP and post-incarceration supervision could be appealed by either party.

The trial court accepted Richardson's *Alford* plea and scheduled a sentencing hearing that would also address the SOTP and post-incarceration supervision. Under the SOTP statute, an offender is ineligible for SOTP if he has demonstrated evidence of an intellectual disability. KRS 197.410(2). In support of his claim that he is intellectually disabled, Richardson presented testimony from Dr. Richard Granacher. Dr. Granacher testified that Richardson suffers from dementia, has an IQ of 70, and would have difficulty learning and remembering information in a classroom setting. However, Dr. Granacher acknowledged that he was unsure whether the Department of Corrections had accommodations available to account for Richardson's

3

intellectual deficits. In response to Richardson's claim of intellectual disability, the Commonwealth pointed to the evaluations performed by KCPC, which concluded that Richardson was competent and did not suffer from an intellectual disability.

After considering both arguments, the trial court noted an incongruence in Richardson's SOTP argument—Richardson entered a plea, meaning that he was competent to understand his legal options and the constitutional rights he was waiving, yet he claimed to be incapable of understanding and retaining information related to sexual offenses. Ultimately, the trial court declined to decide whether Richardson was intellectually disabled, noting that KRS 197.410 did not define the term. Instead, the trial court concluded that it would be appropriate to order Richardson to enroll in SOTP and, if Richardson was ultimately deemed too low functioning to succeed in the program, that problem could be addressed with a Kentucky Rule of Civil Procedure (CR) 60.02 motion or some other appropriate request for relief. The trial court also noted that there was no information about the SOTP in evidence and no evidence that Richardson would be unable to participate in the SOTP.

Richardson also argued that he was not subject to the five-year post-incarceration supervision requirement set out in KRS 532.043 and KRS 532.060 because he entered an *Alford* plea to attempted unlawful transaction with a minor. Richardson noted that the post-incarceration supervision statutes make no mention of attempt offenses, while another statute applicable to sex offenders, the Sex Offender Registration Act (SORA), explicitly includes

4

attempt offenses. KRS 17.500(8). Richardson insisted that the differences in the statutes suggest that the General Assembly did not intend for post-incarceration supervision to apply to attempt crimes. The trial court agreed with Richardson and found that post-incarceration supervision statutes do not apply to attempt crimes.

Following the hearing, the trial court sentenced Richardson to ten years in prison. He denied Richardson's request for probation and ordered him to serve his time, noting that he was entitled to more than 700 days in presentencing custody credit. Thereafter, Richardson appealed the SOTP ruling and the Commonwealth cross-appealed the post-incarceration supervision ruling.

The Court of Appeals held that the trial court acted within its discretion by ordering Richardson to complete the SOTP. "Intellectual disability" is not defined in KRS 197.400-.440 and the statute gives the court wide latitude to determine whether an offender is eligible. The trial court was entitled to disbelieve Dr. Granacher's conclusion that Richardson is intellectually disabled.

Turning to the post-incarceration supervision issue, the Court of Appeals held that the trial court was mandated to order Richardson have post-incarceration supervision pursuant to KRS 532.043. That statute plainly requires that a defendant pleading guilty to the offenses under KRS 530.064(1)(a) "shall be subject to a period of postincarceration supervision

5

. . . ." The appellate court determined that Richardson pleading guilty to two counts of criminal attempt to commit first-degree unlawful transaction with a minor under KRS 530.064 and KRS 506.010 falls "within the ambit of KRS 532.043" and that the trial court "erred by not imposing post-incarceration supervision." Further, the appellate court rejected the Commonwealth's argument that post-incarceration supervision is a question for the Department of Corrections and that the trial court violated separation of powers by addressing the issue. In *Skaggs v. Commonwealth,* 488 S.W.3d 10, 15 (Ky. App. 2016), the Court of Appeals previously held that courts can include the requirements of post-incarceration supervision in their judgments without violating separation of powers. Accordingly, the Court of Appeals reversed and remanded in part for the trial court to impose post-incarceration supervision. Richardson petitioned this Court for discretionary review, which we granted.

## ANALYSIS

Richardson argues that he is ineligible for the SOTP because of his intellectual disability and that he is not subject to post-incarceration supervision. We address each argument in turn.

I. **The Trial Court Did Not Abuse Its Discretion in Holding That Richardson Is an Eligible Offender for the Sex Offender Treatment Program.**

We review a trial court's decision to subject an offender to the SOTP for an abuse of discretion.[3] Under this standard of review, we will overturn a trial

---

[3] In the final judgment, the trial court ordered Richardson to complete the SOTP. Although a standard of review for imposing participation in the SOTP has not explicitly been prescribed by this Court, we find this type of order from the trial court

6

court's ruling only if the decision was arbitrary, unreasonable, or unsupported by law. *Justice v. Commonwealth*, 636 S.W.3d 407, 411 (Ky. 2021). Richardson argues that he is not an "eligible sexual offender" for the SOTP under KRS 197.410(2). According to that statute, a person is a "sexual offender" when he has been adjudicated guilty of a sex crime as defined by KRS 17.500(8), which includes:

> (a) A felony offense defined in KRS Chapter 510, KRS 529.100 or 529.110 involving commercial sexual activity, 530.020, 530.064(1)(a), 531.310, 531.320, or 531.335;
>
> (b) A felony attempt to commit a felony offense specified in paragraph (a) of this subsection.

Richardson pled guilty to criminal attempt to commit first-degree unlawful transaction with a minor, a class C felony, making him a sexual offender. KRS 506.010(4)(c), 530.064(2)(b). However, the SOTP requirement hinges on whether Richardson is an "eligible" sexual offender. KRS 197.410(2) states that

> A sexual offender becomes an "eligible sexual offender" when the sentencing court or department officials, or both, determine that the offender:
>
> > (a) Has demonstrated evidence of a mental, emotional, or behavioral disorder, but not active psychosis or an intellectual disability; and
> >
> > (b) Is likely to benefit from the program.

---

comparable to a sentencing decision, which is reviewed for abuse of discretion. *See Howard v. Commonwealth*, 496 S.W.3d 471, 475 (Ky. 2016).

7

Under this statute, either the sentencing court or the Department of Corrections or both may determine an offender's eligibility for the SOTP.

To determine whether Richardson is an "eligible sex offender" the trial court was tasked with considering whether Richardson suffers from an intellectual disability. As the trial court noted, intellectual disability is not defined by the statute. Richardson argues that because he demonstrated evidence of an intellectual disability, he is ineligible for the SOTP.[4]

The term "individual with an intellectual disability" is defined and used in other areas of the Kentucky Penal Code as "an individual with significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior and manifested during the developmental period and is a condition which may exist concurrently with mental illness or insanity." KRS 504.060(7). The same definition is also used in KRS Chapter 202B, which governs hospitalization of an individual with an intellectual disability, and the Unified Juvenile Code, KRS Chapter 600.

Because the trial court's ruling on the SOTP requirement is reviewed for an abuse of discretion, we need not define intellectual disability for the resolution of this issue. Both Richardson and the Commonwealth presented evidence sufficient to allow the trial court to make a determination as to Richardson's eligibility for the SOTP.

---

[4] If an offender is required to complete SOTP, failure to do so can affect his or her eligibility for probation and good time credit. *See* KRS 197.045(4).

Richardson was initially evaluated by KCPC in January 2017 by Dr. Sparks. Dr. Sparks concluded that Richardson "may narrowly meet criteria for mental illness and does not meet criteria for an intellectual disability." He opined that Richardson has the capacity to appreciate the nature and consequences of the proceedings against him and to participate rationally in his own defense. He also determined that Richardson's IQ is 79 and there was a 95% chance that his IQ fell somewhere between 75 and 83. He noted that "there were no symptoms of cognitive disorder or mental deficits noted in the unit, and that [Richardson's] attending physician did not note symptoms of dementia." Further, Richardson's test results strongly suggested that he was malingering, *i.e.*, intentionally performing poorly.

In December 2017, Richardson was examined by Dr. Granacher at defense counsel's request. Dr. Granacher concluded that, "due to dementia and inability to mentally manipulate information, Lawrence Richardson lacks the mental capacity to properly assist his attorney in this case." According to Dr. Granacher, Richardson is intellectually deficient and illiterate, thus impaired in decisional capacity. Dr. Granacher reported that Richardson was statistically impaired in all tests he administered and Richardson's IQ measures one point above mental retardation. Dr. Granacher was critical of the KCPC evaluation, opining that the evaluation did not appropriately test Richardson's cognitive state.

On February 12, 2018, Richardson submitted Dr. Granacher's report to the trial court and filed a motion requesting a new competency hearing. The

9

trial court ordered a second KCPC evaluation, which was conducted beginning April 27, 2018. Dr. Sparks reviewed Dr. Granacher's report and considered the raw test data provided. Dr. Sparks administered additional testing and noted evidence of exaggeration of symptoms and lack of consistent effort. Dr. Sparks acknowledged Richardson's decline in several areas of testing as compared to the January 2017 evaluation and stated that it "appears relatively unlikely, although not impossible, that Mr. Richardson would have experienced such a precipitous decline in functioning from January 2017 to May 2018." However, even if the results of the May 2018 tests were taken as accurate reflections of ability, Richardson did not appear significantly impaired. Dr. Sparks reiterated his January 2017 conclusion that Richardson meets the criteria for mental illness (personality disorder and anxiety) and does not meet the criteria for an intellectual disability.[5]

The trial court held an hour-long sentencing hearing on August 20, 2018. Dr. Granacher testified via telephone in support of Richardson's claim that he is intellectually disabled. Dr. Granacher stated that Richardson suffers from dementia, has an IQ of 70, and would have difficulty learning and remembering information in a classroom setting. However, Dr. Granacher acknowledged that he was unsure whether the Department of Corrections had accommodations available to account for Richardson's intellectual deficits. He also testified that he first evaluated Richardson in 1993, at which point he had

---

[5] No reference to Richardson's IQ score appears in Dr. Sparks's May 2018 report.

10

an IQ of 75. Dr. Granacher attributed the decline in IQ to his dementia. While Dr. Granacher was unfamiliar with the SOTP, despite minimal exposure to the program, he opined that it would not harm Richardson to attend.

The Commonwealth did not present any witnesses or introduce any exhibits at the hearing but pointed to the evaluations performed by KCPC which concluded that Richardson was competent and does not suffer from an intellectual disability.

The trial court acknowledged that a "missing piece" in the consideration of the arguments was whether Richardson could be accommodated in a way that could allow him to complete the program, in much the same way as someone who cannot read or write is accommodated in Drug Court. Additionally, the trial court noted an incongruence in Richardson's argument— Richardson entered a plea, meaning that he was competent to understand his legal options and the constitutional rights he was waiving, yet claimed to be incapable of understanding and retaining information related to sexual offenses.

Ultimately, the trial court declined to decide whether Richardson was intellectually disabled, recognizing that KRS 197.410 does not define the term. The trial court recognized that "intellectual disability" can include a wide variety of conditions and there is no evidence that Richardson cannot participate in the program. The trial court concluded that it was appropriate to enroll Richardson in the SOTP and, if Richardson was ultimately deemed too low functioning to succeed in the program, that problem could be addressed

11

with a CR 60.02 motion or some other appropriate request for relief. The trial court also acknowledged that those tasked with operating the program could address any issues Richardson may have and that accommodations may be available to allow Richardson to benefit from the program.

KRS 197.410 gives the sentencing court and the Department of Corrections the authority to determine whether a sexual offender is eligible for the SOTP. The Department of Corrections is tasked with the operation of the SOTP and has "the sole authority and responsibility" for establishing its design. KRS 197.420(1). It also has the ability to "transfer sexual offenders sentenced to its custody to the program. . . ." KRS 197.420(3). Each program includes diagnostic and treatment services and is staffed with a program director, clinical psychologist, and counselor. KRS 197.420(5)(a)-(c).

The trial court was presented with competing expert testimony as to Richardson's mental capabilities and deficits. "[T]he trial court, as the finder of fact, has the responsibility to judge the credibility of all testimony, and may choose to believe or disbelieve any part of the evidence presented to it." *Cabinet for Health & Fam. Servs. v. P.W.*, 582 S.W.3d 887, 896 (Ky. 2019) (citing *Caudill v. Maloney's Disc. Stores*, 560 S.W.2d 15, 16 (Ky. 1977)). The trial court was free to believe Dr. Sparks's evaluation that Richardson does not suffer from an intellectual disability and base its ruling on that evidence. Having presided over the case since Richardson was indicted in October 2016, the trial court was best suited to determine Richardson's eligibility for the program. Further, the trial court's reasoning that Richardson

12

could address potential learning problems with the Department of Corrections is consistent with the SOTP statute, which gives both the Department of Corrections and the court a role in assessing an offender's eligibility. In light of the foregoing facts and the statute, we affirm the Court of Appeals' holding that the trial court did not abuse its discretion by ordering Richardson to complete the SOTP.

**II.    The Trial Court Did Not Err in Finding That Richardson Is Not Subject to Post-Incarceration Supervision.**

Next, we must determine whether the legislature intended to impose post-incarceration supervision upon offenders who commit attempt offenses. These issues require statutory interpretation, a question of law, which we review de novo. *Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011). When interpreting a statute, a court should "give effect to the intent of the General Assembly." *Beckham v. Bd. of Educ.,* 873 S.W.2d 575, 577 (Ky. 1994).

> [W]e must look first to the plain language of a statute and, if the language is clear, our inquiry ends. We hold fast to the rule of construction that the plain meaning of the statutory language is presumed to be what the legislature intended, and if the meaning is plain, then the court cannot base its interpretation on any other method or source. In other words, we assume that the Legislature meant exactly what it said, and said exactly what it meant.

*Univ. of Louisville v. Rothstein,* 532 S.W.3d 644, 648 (Ky. 2017) (citations and quotations omitted).

KRS 532.043 requires post-incarceration supervision for certain offenders:

> (1) In addition to the penalties authorized by law, any person convicted of, pleading guilty to, or entering an Alford plea to a felony offense under KRS Chapter 510, 529.100 involving

13

commercial sexual activity, 530.020, 530.064(1)(a), 531.310, or 531.320 shall be subject to a period of postincarceration supervision following release from:

(a) Incarceration upon expiration of sentence; or

(b) Completion of parole.[6]

Richardson was convicted of attempted unlawful transaction with a minor, KRS 530.064(1)(a), and the trial court judgment also included KRS 506.010, the attempt statute. While KRS 530.064(1)(a) is included in the list of offenses requiring post-incarceration supervision, KRS 532.043 does not reference attempt crimes. Therefore, Richardson argues that KRS 532.043 is inapplicable, and the Court of Appeals erred in concluding that he is eligible for post-incarceration supervision.

KRS 532.043 "mixes the roles of the judicial and executive branches of government." *Jones v. Commonwealth,* 319 S.W.3d 295, 298 (Ky. 2010). The five-year period of supervision, akin to a conditional discharge, begins upon a person's final release from incarceration or parole. *Id.* "The conditions and supervision of the felony conditional discharge are set by the executive branch." *Id.* The statute is clear in stating which offenses require post-incarceration supervision.

---

[6] The Court of Appeals' opinion cites KRS 532.043 for its discussion of post-incarceration supervision. Richardson cites KRS 532.060(3), which is virtually identical. KRS 532.060 does not reference offenses in KRS 529.010 involving commercial sexual activity or offenses under KRS 531.320. However, both statutes require post-incarceration supervision for offenses under KRS 530.064(1)(a). Because the Court of Appeals referenced KRS 532.043, we use this statute as the basis for our discussion.

14

Richardson observes that another statute applicable to sex offenders, the Sex Offender Registration Act (SORA), defines "sex crime" to include:

> (a) A felony offense defined in KRS Chapter 510, KRS 529.100 or 529.110 involving commercial sexual activity, 530.020, 530.064(1)(a), 531.310, 531.320, or 531.335; [and]
>
> (b) A felony attempt to commit a felony offense specific in paragraph (a) of this subsection.

KRS 17.500(8). Richardson argues that the differences in the statutes—SORA's express inclusion of attempt crimes and the supervision statute's silence on the matter—suggests that the General Assembly did not intend for post-incarceration supervision to apply to attempt crimes.

The SORA was enacted in 1994 and originally included felony offenses under KRS Chapter 510, KRS 530.020, 530.064, or 531.310 and felony attempt to commit a sex crime as subject to sex offender registration. Four years later, the post-incarceration supervision statute was enacted with no reference to felony attempt. It is presumed that the General Assembly acted with knowledge that it was not including "felony attempt to commit a sex crime" within the offenses subject to post-incarceration supervision. "[O]ur rules of statutory construction presume that the legislature is aware of the state of the law at the time it enacts a statute . . . ." *St. Clair v. Commonwealth,* 140 S.W.3d 510, 570 (Ky. 2004) (quotations and citations omitted). The inclusion of attempt crimes in the SORA statute but its omission in the post-incarceration supervision statute evidences the General Assembly's intent.

We note that KRS 530.064(1)(a) is listed in both the SORA and the post-incarceration supervision statute. Yet the General Assembly thought it

15

necessary to include in a separate subsection of KRS 17.500, specifically (8)(b), a provision which made a felony attempt to commit an unlawful transaction with a minor subject to sex offender registration. If the General Assembly intended that felony attempt to commit a sex crime be subject to post-incarceration supervision, it could have stated so in that statute as well.

"In cases involving statutory interpretations, the duty of the court is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment or discover meanings not reasonably ascertainable from the language used." *Commonwealth v. Harrelson,* 14 S.W.3d 541, 546 (Ky. 2000). While we recognize that the omission of attempt offenses may have been mere oversight, we cannot read those offenses into the statute. The omission of attempt crimes from the post-incarceration supervision statute must be viewed as purposeful legislative action. If the legislature intends for attempt offenders to be subject to post-incarceration supervision, it must take the necessary action to reflect that intent and amend the statute appropriately.

### CONCLUSION

The trial court properly applied the SOTP and post-incarceration supervision statutes and, as a result, did not err in issuing its final judgment. For the foregoing reasons, we affirm the Court of Appeals' opinion as to the SOTP requirement, but we reverse as to the post-incarceration supervision requirement and remand to the trial court for reinstatement of its original judgment.

16

All sitting. Minton, C.J.; Conley, Keller, Nickell, and VanMeter, JJ., concur. Lambert, J., concurs in part and dissents in part without separate opinion.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd Dryden Ferguson
Assistant Attorney General